## Case No. 15,684.
### UNITED STATES v. McKEE.
[See Case No. 15,683.]
£6FED.CAS.—70

## Case No. 15,685.
### UNITED STATES v. McKEE.
[3 Dill. 546; 1 3 Cent. Law J. 100; 23 Pittsb. Leg. J. 107.]

Circuit Court, E. D. Missouri. Jan. 25, 1876.

CRIMINAL EVIDENCE — DECLARATIONS OF CO-CONSPIRATORS—UNCORROBORATED TESTIMONY OF ACCOMPLICES.

1. On the trial of an indictment for a conspiracy to defraud the government out of internal revenue taxes, where a conspiracy has been proven, and there is evidence connecting the defendant therewith, and one of the conspirators has testified to the fact that, at the end of every week, he gave to a co-conspirator certain moneys, the gains of the conspiracy, it is competent to show by the witness what directions he gave to such co-conspirator as to paying or delivering the money to the defendant.

2. In such case, the subsequent declarations of such co-conspirator, as to what he did with the moneys so paid to him, are admissible as a part of the res gestæ, but not for the purpose of connecting the defendant with the conspiracy, and the jury should disregard it, unless they should be of opinion that the defendant has been connected with the conspiracy by evidence aliunde.

3. In determining whether there has been sufficient evidence of a conspiracy to warrant, as against the defendant, the admission of evidence of the acts and declarations of the alleged conspirators, the court is not at liberty to reject the uncorroborated testimony of self-confessed accomplices and members of the conspiracy. Nor can the court declare, as matter of law, that such testimony is unworthy of belief, unless corroborated. The credibility of such testimony is a question for the jury, under the advice and direction of the court, and is not a question of law for the court.

Indictment [against William M'Kee] for conspiring to defraud the government out of taxes on distilled spirits. Megrue, a conspirator, who had previously pleaded guilty, being on the witness stand, and having testified that, at the end of each week, he turned over a portion of the gains of the conspiracy to Leavenworth, a co-conspirator, since deceased, was asked by the attorney for the government whether he paid the money to Leavenworth, with directions to pay it to the defendant. The question was objected to, and the objection was argued at great length by

Chester H. Krum and Henry A. Clover, in support of the objection.

James O. Broadhead, Lucien Eaton, and D. P. Dyer, contra.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. Evidence by several witnesses has been given, tending to show a conspiracy between certain distillers in the city of St. Louis and the revenue officials, to defraud the government, from week to week, of the tax on distilled spirits produced at their distilleries.

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

The statements of the witnesses are that the government was to be defrauded out of its tax in this way, viz: One-half of the tax on each gallon was to be retained by the distillers for their share of the fraudulent gains, and the other half was to go to the revenue officers and the other conspirators. The scheme did not contemplate a single fraudulent act, confined to one distillery, but extended to nearly every distillery in the city, and was to continue for an indefinite period. This scheme is testified to by Megrue, Fitzroy, Engelke, and Thorpe, all of whom confess themselves to have been members of the conspiracy, and to be under indictment for these frauds. All of these witnesses have given evidence, which, if true, tends to implicate the defendant as being in the conspiracy, which commenced in 1871, and continued until May, 1875, when the distilleries were seized and criminal prosecutions soon afterwards set on foot. Megrue testifies that he took charge of the illegal organization about September, 1871, and that he received weekly, every Saturday, from the distillers in the organization, the amount of "stolen tax," as he styles it, and disbursed the half of it, received by the witness, to certain parties as follows: "The money left after paying gaugers, store-keepers, etc., was divided by the witness into five packages; one-fifth was given by the witness to McDonald (supervisor of internal revenue); one-fifth was kept by the witness, and two-fifths was given by the witness to one John Leavenworth, a gauger, since deceased." The share of the witness, between September, 1871, and November, 1872, he states to have been about $50,000 or $60,000.

It is now proposed by the government to ask the witness, Megrue, what directions he gave to Leavenworth as to the disposition of the packages containing the two-fifths; that is, it is proposed to show that he was directed at the time by Megrue to pay it to the defendant and the collector of internal revenue, and to show, furthermore, the subsequent declarations of Leavenworth to the witness, that the money intended for McKee (the defendant) had, in fact, been paid McKee by Leavenworth. This testimony is objected to by the counsel for the defendant.

1. It is objected that the government cannot show by the witness what directions he gave to Leavenworth at the time, as to paying or delivering money to the defendant. This was during the conspiracy—was the act of two of the conspirators in the carrying out of the conspiracy, and is, in our judgment, clearly competent. Indeed, this objection was practically abandoned on the argument; at least, not insisted on.

2. But it is stoutly objected that the subsequent declarations of Leavenworth to Megrue, as to what he had done with the money received from Megrue, is incompetent for any purpose against the defendant. We have had the benefit of a discussion at the bar rarely surpassed in the ability and learning displayed on either side, and the authorities have been extensively reviewed. We content ourselves with stating our conclusions, which rest largely upon the circumstances of this case as it now stands upon the evidence, particularly with respect to the continuous nature of the conspiracy. The general rule of law is undisputed, that, when a conspiracy is shown to exist, all acts done, and all declarations made to advance the common cause, or made in connection with acts done in furtherance of the conspiracy, by any one of the conspirators, are admissible against all. Megrue and Leavenworth were conspirators; and the conspiracy was not at an end. If the testimony of the witnesses, all of whom are accomplices, is to be credited, it tends to show that McKee was in the conspiracy. What took place between Megrue and Leavenworth, in reference to the distribution of this money, from week to week at the different times when the money was delivered by the one to the other, seems to us part of the res gestæ of the transaction, and admissible as such, to show and explain the acts of two of the conspirators. It does not seem to us to be the same as if the declarations of Leavenworth had been made to third persons, or had been made after the conspiracy had ended. We think the declarations of Leavenworth made to Megrue, as to what he did with the illicit money previously received, are competent to explain the act of receiving other like funds continuously, from week to week, and to show the relations of these persons to the transaction, and to each other. But, unless the defendant is otherwise connected with the conspiracy, such declarations on the part of Leavenworth, to the effect that he had paid money to the defendant, canno be used to establish the fact that the defendant did receive money. In other words, that must be proven by evidence aliunde the declarations; that is, the fact of the conspiracy, and the defendant's connection therewith, as a guilty participator therein, must be proved, by independent evidence, before declarations of the alleged conspirator can be considered as evidence against another not present when the declarations were made. If the jury shall find the proof of the defendant's alleged connection with the conspiracy fails, it will be their duty not to consider any declarations of Leavenworth not made in defendant's presence, for the purpose of showing his complicity with the conspiracy. The mere declarations of an agent cannot prove his agency or authority to bind another.

3. It is also objected that there is no evidence sufficient to be submitted to the jury to show the connection of the defendant with the alleged conspiracy. It is not denied that the evidence of Megrue, Fitzroy, Engelke, and Thorpe (these being the only witnesses examined so far), if true, would establish this sufficiently to be laid before the jury for their consideration. But, it is insisted, that, as

they are all confessed accomplices, and under indictment as such, that their uncorroborated testimony will not justify a conviction, and, hence, should not be considered by the court as a sufficient evidence of a conspiracy to warrant, as against the defendant, proof of the acts and declarations of the alleged conspirators.

We recogniz⁰ the danger of a conviction resting alone on the unsupported evidence of confessed accomplices, and if, when the testimony is closed, those accomplices are not corroborated, we shall state the law, in this regard, to the jury, as we understand it. It were premature to decide it now. But the position taken that the court can pronounce, as a matter of law, that the evidence of an accomplice is not worthy of any belief or credence, except so far as corroborated, cannot be maintained, especially in view of the legislation of congress which compels accomplices to testify. Accomplices are competent witnesses; and, in our system of jurisprudence, the credibility of all witnesses, accomplices as well as others, is for the jury, and not the court—for the jury under the advice and direction of the court. The proposition maintained, in this respect, by the counsel for the defendant, would substitute the court for the jury, and would be an invasion of the province of the latter, which is without any well-established precedent. Testimony admitted.

[NOTE. Judge DILLON, with Judge TREAT concurring, afterwards delivered the charge to the jury, which rendered a verdict of guilty, and the defendant was sentenced to pay a fine of $10,000 and to two years' imprisonment. Case No. 15,686. Subsequently a motion was made by the defendant for a new trial, which motion was denied. See Id. 15,683. The defendant then moved in arrest of judgment and to dismiss on three grounds, viz.: (1) That there is no indictment against the defendant pending in the circuit court. (2) That the circuit court has no jurisdiction of the case. (3) That the defendant was not tried on the original indictment, but on an alleged copy thereof. These motions were overruled. Subsequently the defendant was granted an unconditional pardon by the president, a copy of which, with his plea, he exhibited. See Id. 15,687. The plaintiff then entered a demurrer. The defendant's plea was held to be good, and accordingly the demurrer was overruled. Id. 15,688.]