## RAINE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 9, 1924.)

No. 4232.

1. **Intoxicating liquors** ⬤⇒249—**Prohibition agent empowered to execute search warrants.**

Under National Prohibition Act Oct. 28, 1919, tit. 1, §§ 2, 5 (Comp. St. Ann. Supp. 1923, §§ 10138¼b, 10138¼e), and title 2, § 1, subd. 7, and section 28 (Comp. St. Ann. Supp. 1923, §§ 10138½, 10138½o), and Act Nov. 23, 1921, § 6 (Comp. St. Ann. Supp. 1923, § 10184a), and in view of Const. art. 2, § 2, cl. 2, prohibition agents have power to execute search warrants.

2. **Criminal law** ⬤⇒394—**Evidence as to what officers saw and heard after they had hid themselves on defendant's premises without service of warrant held admissible.**

Where officers armed with search warrant went on defendant's premises and hid themselves during nighttime, while defendant was absent, testimony as to what they saw and heard on defendant's return, and as to exchange of shots between defendant and officers on defendant's discovery of their presence, held admissible, though warrant had not been served.

3. **Searches and seizures** ⬤⇒3—**Search of premises without warrant, but with consent of person left in charge by owner, held lawful.**

Search of premises without warrant, but with consent of person left in charge by owner on his arrest, held lawful. (Per Gilbert, Circuit Judge.)

4. **Criminal law** ⬤⇒1169(2)—**Erroneous admission of evidence held harmless, in view of overwhelming proof of guilt by means of other evidence.**

In liquor prosecution, admission of evidence obtained by means of illegal search warrant held harmless, in view of evidence overwhelmingly proving defendant guilty. (Per Gilbert, Circuit Judge.)

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Criminal law ⬤➡1144(½)—Conviction of having possession of property designed for manufacture of intoxicating liquor will be sustained, in absence of showing that two charges grew out of same transaction.**

Conviction of possession of property designed for the manufacture of liquor intended for use in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), and of the manufacture of intoxicating liquor, will be sustained, in the absence of a showing that the two charges grew out of the same transaction. (Per Gilbert, Circuit Judge.)

**6. Intoxicating liquors ⬤➡236(19)—Evidence held to sustain conviction for possession of property designed for manufacture of liquor and for manufacture.**

In prosecution for having possession of property designed for the manufacture of liquor intended for use in violation of law, and for manufacture of liquor, testimony of officers who hid themselves on defendant's premises during nighttime as to what they saw and heard on defendant's return, and as to exchange of shots on discovery of officers' presence, *held* sufficient to sustain conviction. (Per Rudkin, Circuit Judge.)

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nevada; Frank S. Dietrich, Judge.

Robert F. Raine was convicted of having possession of property designed for the manufacture of liquor intended for use in violation of National Prohibition Act, and of manufacture of intoxicating liquor, and he brings error. Affirmed.

The plaintiff in error was convicted on two counts of an indictment, one of which charged him with the possession of property designed for the manufacture of liquor intended for use in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.); the other count charged him with the manufacture of intoxicating liquor. He lived upon a large inclosed ranch. On December 19, 1922, a search warrant was issued directing federal prohibition officers to enter the ranch premises, search the same, including the dugouts, sheds, and outbuildings connected therewith, for intoxicating liquor, and apparatus for manufacturing the same, and to take the same into their possession. In the evening of that day three prohibition agents went upon the premises of the plaintiff in error and proceeded to a dugout at a point about one-third of a mile from his dwelling house. In the meantime they had caused a message by telephone to be sent to the plaintiff in error, informing him that federal officers would be at his ranch at daylight, and advising him that he had better dump "that stuff in the willows." About midnight the plaintiff in error and his codefendant, Brite, appeared on the scene on horseback. Brite dismounted and proceeded to the dugout. Thereupon the prohibition agents leveled their guns upon the plaintiff in error and advised him that he was under arrest. Shots were fired, and one of the agents was mortally wounded. The plaintiff in error retreated from the scene. The agents went to the door of the dugout, which was open, and saw barrels therein.

On December 21 the United States marshal, with a deputy and a prohibition agent, went to the ranch of the plaintiff in error and arrested the plaintiff in error and Brite. Later in the day they returned to the ranch and seized certain articles, which were admitted in evidence on the trial. On December 23 a return was made on the search warrant, stating under oath that the premises described in the warrant had been searched, and that a stove used for distillery purposes and five gallons of mash and other property, had been seized as evidence. On December 26, 1922, a further search was made, and in the dugout further articles were seized, which were later offered in evidence. At that time the prohibition agents had no search warrant in their possession.

B. F. Curler and M. B. Moore, both of Reno, Nev., for plaintiff in error.

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

George Springmeyer, U. S. Atty., and Chas. A. Cantwell, Asst. U. S. Atty., both of Reno, Nev.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Error is assigned to the refusal of the court to return, suppress, and exclude the evidence obtained upon the searches of the premises of the plaintiff in error, and it is contended that the search warrant was void because issued to a prohibition agent, that a prohibition agent is not authorized by law to execute a search warrant, and that the prohibition agents were not authorized to enter the inclosed premises of the plaintiff in error in a clandestine and stealthy manner under the authority of a search warrant, without serving or attempting to serve the same. It is further contended that the prohibition agents were not competent to testify to any fact obtained by them on the premises of the plaintiff in error, their entry having been made secretly, and without service or attempted service until after the arrest of the plaintiff in error.

[1] The contention is that the portion of the Volstead Act, which adopts the provisions of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h) as to the conditions of the issuance of search warrants and the form and service thereof by "civil officers," makes it certain that, under clause 2, section 2, article 2, of the Constitution, the officers so referred to, are such only as hold their appointment through the President, or through the courts, or through the heads of departments, and United States v. Musgrave (D. C.) 293 Fed. 203, is cited, in which it was so held. We are unable to agree with that contention. Our views coincide with those expressed in United States v. Daison (D. C.) 288 Fed. 199, United States v. Keller (D. C.) 288 Fed. 204, United States v. Syrek (D. C.) 290 Fed. 820, United States v. O'Conner (D. C.) 294 Fed. 584, and United States v. American Brewery Co. (D. C.) 296 Fed. 772.

The National Prohibition Act (Comp. Stat. Ann. Supp. 1923, § 10138¼b) directs the Commissioner of Internal Revenue, his assistants, agents, and inspectors, to investigate and report violations of the War Prohibition Act (Comp. St. Ann. Supp. 1919, §§ 3115$^{11}$/$_{12}$f–3115$^{11}$/$_{12}$h), and confers upon such Commissioner, his assistants, agents, and inspectors, power to swear out warrants before the United States commissioners or other officers. Section 10138¼e recognizes prohibition agents as officers of the United States. It provides that the Commissioner of Internal Revenue, his assistants, agents, and inspectors, "and all other officers of the United States" whose duty it is to enforce the criminal laws, shall have the power for the enforcement of the War Prohibition Act, or any provisions thereof, which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the laws of the United States. Title 2, § 1, subd. 7 (41 Stat. 308 [Comp. St. Ann. Supp. 1923, § 10138½]), provides that any act authorized to be done by the Commissioner may be performed by any assistant or agent designated by him for that purpose. Section 28 of the same title (section 10138½o) gives to the Commissioner, his assistants, agents, and inspectors, power and protection—

"in the enforcement of this act or any provisions thereof which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States."

These inclusive words should be held to mean that the prohibition agent is constituted a peace officer. Convincing evidence that such is the intention of the statutes is found in section 6 in the act supplementary to the National Prohibition Act (42 Stat. 223 [Comp. St. Ann. Supp. 1923, § 10184a]), which imposes a penalty on any officer, agent, or employé of the United States engaged in the enforcement of the National Prohibition Act who shall search a private dwelling without a warrant directing such search, "or who while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property." Clearly by implication this statute recognizes the power of prohibition agents to execute search warrants.

[2] It is contended that the plaintiff in error was entitled to the exclusion of all evidence of what the officers saw and heard upon his premises on the night of December 19, for the reason that their entry thereon was clandestine and unlawful; no service having been made of the search warrant. It is true that the officers went upon the premises at night and in a secret manner, and awaited the appearance of the plaintiff in error; they having caused to be sent him what purported to be a friendly warning to the effect that officers would be there in the morning, and the advice that he "dump that stuff in the willows." The appearance of the plaintiff in error and his codefendant, Brite, upon the scene, was evidence to the officers that they had come in response to the warning, and that the illicit still in the dugout belonged to them. The officers heard Brite tell the plaintiff in error to stay and watch the place and "kill the first son of a bitch that shows up." They heard one of them remark "that it smelled pretty strong down there," referring to the dugout, and heard the other answer that he would go down and open it and let the air out. The officers had noticed the strong odor of fermentation, and after the dugout had been opened by Brite they saw the contents of it. When they told the plaintiff in error he was under arrest, he began firing, and thereupon several shots were exchanged, and one of the officers was mortally wounded.

The foregoing is the substance of the testimony as to what occurred on December 19. There was clearly no error in its admission. The officers were armed with a search warrant, but there was no occasion to use it. They did not need to serve it in order to go upon the land of the plaintiff in error. They had no occasion to open the door of the dugout. It was opened by Brite. They had ample evidence of their senses that a crime was then and there being committed. Conclusive against the contention here urged is Hester v. United States, 44 Sup. Ct. 445, 68 L. Ed. ——, decided by the Supreme Court on May 5, 1924. In that case the officers had no warrant for search or arrest. The evidence which they offered consisted of articles which they found in the dooryard of the premises of the accused. Said the court:

"The special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law."

[3] Nor was the plaintiff in error entitled to the exclusion of the evidence obtained by the officers on December 21. On that morning the plaintiff in error had been arrested and he had left one Jack Leonard in charge of his ranch. When the officers arrived on the premises, Leonard gave full permission to enter and search for evidence. The officers discovered certain articles which tended to show that there had been distillation at the dugout, and proof of what they found was received in evidence. Notwithstanding that the officers had omitted to bring with them their search warrant, they could lawfully, with the consent of the owner, enter upon and search the premises. Dillon v. United States (C. C. A.) 279 Fed. 639; Maldonado v. United States (C. C. A.) 284 Fed. 853; Windsor v. United States (C. C. A.) 286 Fed. 51. The case is unlike Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, where it was held that the act of a man's wife in allowing government officers to enter his home without a warrant, for the purpose of making a search, was not a waiver of his constitutional privilege against unreasonable search and seizure; the court being of the opinion there was "implied coercion." In the present case there was neither actual nor implied coercion. The permission to search was freely given. What is here said in regard to the evidence obtained on December 21 is applicable in every respect to the evidence obtained on December 26.

[4] It is to be conceded that there was no authority to search the dwelling house of the plaintiff in error, there having been no showing of illegal sale of liquor therein. But the only assignment of error which challenges the introduction of evidence of what was seen by the officer in the dwelling house is directed to the proof that one of the officers noticed several sacks of sugar in the house. The introduction of that evidence could not have prejudiced the plaintiff in error, in view of the overwhelming proof of the distillation of liquor at the dugout, and the presence of apparatus therefor, and the large quantity of material for fermentation found elsewhere upon the premises of the plaintiff in error.

[5] The point is urged, although it is unsupported by assignment of error, that the plaintiff in error could not be lawfully punished both for the manufacture of intoxicating liquor and the possession of materials and property to be used in such manufacture; the contention being that evidence to sustain either count will sustain the other. Gavieres v. United States, 220 U. S. 338, 31 Sup. Ct. 421, 55 L. Ed. 489, and Morgan v. Devine, 237 U. S. 632, 35 Sup. Ct. 712, 59 L. Ed. 1153, are cited, together with Reynolds v. United States (C. C. A.) 280 Fed. 1, in which it was held that the defendant could not be punished under each of two counts, one charging the manufacture of intoxicating liquors and the other the possession of implements and materials designed for such manufacture, where the charges contained in the respective counts grew out of substantially the same transaction. Not all of the evidence is contained in the bill of exceptions. There is nothing in the record before us to show that the two charges grow out of the same transaction. Necessarily, in a charge of manufacturing intoxicating liquor, there must be implied the possession of the necessary material and apparatus to manufacture it.

But one engaged in such manufacture might well be charged with the possession of property intended for use in manufacturing intoxicating liquor, which was not yet actually used by him in the particular act of manufacturing liquor of which he was charged. Such was evidently the case here. There was evidence that the plaintiff in error had, elsewhere than at the dugout, large quantities of material adapted to the manufacture of liquor; and certain it is, in the absence of an assignment of error, that the record here does not show that the court in imposing sentence committed that plain error which is requisite to entitle us to review its action. The two counts are not more incompatible than counts which have been sustained by this and other courts. Massey v. United States (C. C. A.) 281 Fed. 293; De Jianne v. United States (C. C. A.) 282 Fed. 737; Bell v. United States (C. C. A.) 285 Fed. 145; Traversi v. United States (C. C. A.) 288 Fed. 375; Singer v. United States (C. C. A. 288 Fed. 695.

The judgment is affirmed.

RUDKIN, Circuit Judge. I see no special reason for disagreeing with the conclusion of Judge GILBERT on the question of the validity of the search warrant, or the authority of the prohibition agents to execute it, but neither the validity of the warrant nor the authority to execute it is involved in the present case.

[6] On the first visit to the ranch there was no invasion of the home. The utmost that can be claimed is that the officers were trespassers there, and conceding all this testimony as to what they saw and heard was clearly competent. If this testimony was competent, there is no question as to the guilt of the accused, and for that reason I concur in the judgment. I do not concede, however, that the officers derived any authority to make the subsequent searches, either from a search warrant not in their possession or from the consent given by a mere servant or caretaker.

ROSS, Circuit Judge (dissenting). I respectfully dissent. The home of every person in this country, whether it be a hut or a palace, and whether it embraces only a few feet of ground, or as many acres, is secure against invasion without his consent, unless made under and by virtue of a legal warrant of search and seizure. And this because of the Fourth and Fifth Amendments of the Constitution of the United States and of numerous decisions of the Supreme Court, the first of which amendments declares that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," and the second of which declares, among other things, that no person "shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." See particularly Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann.

Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.

The sacredness of the home and the other constitutional rights so secured to the citizen are, as I read and construe the national prohibition legislation, both original and supplemental, observed and respected. I am unable to see any evidence, direct or by implication, in section 6 of the act supplemental to the National Prohibition Act (42 Stat. 222, 223 [Comp. St. Ann. Supp. 1923, § 10184a]), changing the person or persons to whom a warrant of search and seizure was by the original act authorized to be issued. Section 6 of the supplemental act reads as follows:

"That any officer, agent, or employee of the United States engaged in the enforcement of this act, or the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act, and occupied as such dwelling without a warrant directing such search, or who while so engaged shall without a search warrant maliciously and without reasonable cause search any other building or property, shall be guilty of a misdemeanor and upon conviction thereof shall be fined for a first offense not more than $1,000, and for a subsequent offense not more than $1,000 or imprisoned not more than one year, or both such fine and imprisonment.

"Whoever not being an officer, agent, or employee of the United States shall falsely represent himself to be such officer, agent or employee and in such assumed character shall arrest or detain any person, or shall in any manner search the person, buildings, or other property of any person, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $1,000, or imprisoned for not more than one year, or by both such fine and imprisonment."

The words "without a warrant directing such search," in section 6, obviously and necessarily, in my opinion, mean a *legal* warrant, such as was expressly and specifically provided for in the original act, to which act reference must be made to ascertain the statutory requirements of such warrant and to whom it is authorized to be issued.

Section 6 of the supplemental act simply provides the consequences that shall result to "any officer, agent, or employee of the United States engaged in the enforcement of [the supplemental] act, or the National Prohibition Act, or any other law of the United States, who shall search any private dwelling as defined in the National Prohibition Act, and occupied as such dwelling," without the statutory warrant. It nowhere undertakes to define the requirements of the warrant, or declare to whom it shall be issued. Those requirements are, as has been said, expressly and specifically stated in the original act, and the supplemental act nowhere undertakes to enlarge upon or change them.

Section 2 of the original act (41 Stat. 308 [Comp. St. Ann. Supp. 1923, § 10138½a]) is as follows:

"The Commissioner of Internal Revenue, his assistants, agents, and inspectors shall investigate and report violations of this act to the United States attorney for the district in which committed, who is hereby charged with the duty of prosecuting the offenders, subject to the direction of the Attorney General, as in the case of other offenses against the laws of the United States; and such Commissioner of Internal Revenue, his assistants, agents,

and inspectors may swear out warrants before United States commissioners or other officers or courts authorized to issue the same for the apprehension of such offenders, and may, subject to the control of the said United States attorney, conduct the prosecution at the committing trial for the purpose of having the offenders held for the action of a grand jury. Section 1014 of the Revised Statutes of the United States is hereby made applicable in the enforcement of this act. Officers mentioned in said section 1014 are authorized to issue search warrants under the limitations provided in title XI of the act approved June 15, 1917 (Fortieth Statutes at Large, page 217 et seq.)."

Section 1014 of the Revised Statutes (Comp. St. § 1674), thus made applicable in the enforcement of the Prohibition Act, is as follows:

"For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

The officers mentioned in section 1014 of the Revised Statutes just quoted are, by the express declaration of section 2 of the Prohibition Act above quoted, "authorized to issue search warrants under the limitations provided in title XI of the act approved June 15, 1917 (Fortieth Statutes at Large, page 217 et seq.)." The act of June 15, 1917, is what is commonly known as the Espionage Act and was one of the late war measures.

The search warrants that the National Prohibition Act authorized to be issued for its enforcement are, according to its express declaration, to be issued "under the limitations provided in title XI of the act approved June 15, 1917 (Fortieth Statute at Large, page 217 et seq.)." It is entitled:

"An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes."

Title 11 is headed "Search Warrants," and its first section (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼a) provides:

"Section 1. A search warrant authorized by this title may be issued by a judge of a United States District Court, or by a judge of a state or territorial court of record, or by a United States commissioner for the district wherein the property sought is located."

Its second section specifies the grounds upon which a search warrant may be issued, and sections 3, 4, 5, 6, and 7 thereof (sections 10496¼c–10496¼g) are as follows:

"Sec. 3. A search warrant can not be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched.

"Sec. 4. The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

"Sec. 5. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.

"Sec. 6. If the judge or commissioner is thereupon satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States, stating the particular grounds or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof, and commanding him forthwith to search the person or place named, for the property specified, and to bring it before the judge or commissioner.

"Sec. 7. A search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

The extreme care thus taken by Congress to secure the constitutional rights of our people in authorizing the issuance of search warrants, even in furtherance of the war in which the country was then engaged, was also taken in its subsequent effort to end the evils resulting from the traffic in liquor, for in enacting the Prohibition Act it expressly declared, as has been above shown, that search warrants authorized to be issued for its enforcement shall be issued "under the limitations" provided in the Espionage Act of June 15, 1917, among which is, as above shown, the declaration that such warrants shall be issued "to a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof, or to a person so duly authorized by the President of the United States, stating the particular grounds or probable cause for its issue and the names of the persons whose affidavits have been taken in support thereof, and commanding him forthwith to search the person or place named, for the property specified, and to bring it before the judge or commissioner," and further expressly declaring that such a warrant may in all cases be served by any of the officers so mentioned, "but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."

The power of Congress so to provide is expressly conferred by section 2 of article 2 of the Constitution, which declares, among other things, that:

"The Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments."

That the thousands of agents and employees of the prohibition officers are "civil officers," within the designation and meaning of the Constitution and statutes to which reference has been made; and to whom warrants of search and seizure are authorized to be directed and issued, is, I think, clearly negatived by the decision of the Supreme

Court in Burnap v. United States, 252 U. S. 512, 40 Sup. Ct. 374, 64 L. Ed. 692, and cases there cited. Such agents and employees do not seem to be even under civil service rule, but apparently are political appointments in the strictest sense.

In my opinion, the judgment should be reversed, and the case remanded to the court below for a new trial.