### GREEN et al. v. UNITED STATES. *

Circuit Court of Appeals, Ninth Circuit. May 9, 1927.

No. 5006.

1. **Criminal law ⚖1072—Rule forbidding writ of error, unless assignment of errors is filed, is only rule of practice (Circuit Court rule 11).**

Circuit Court rule 11, requiring that no writ of error shall be allowed, unless assignment of

*Rehearing denied July 18, 1927.

error has been filed, is not jurisdictional, but is only a rule of practice.

2. **Criminal law ⚖424(1)—Statements of defendant not on trial to officers while under arrest held admissible, where evidence connected him with conspiracy (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), statements which certain defendant not on trial made to government officers while under arrest were admissible, where evidence tended to connect such defendant with conspiracy charged, notwithstanding that he was not on trial with other defendant; it not even being necessary that he should have been indicted in order to render declarations admissible.

3. **Criminal law ⚖423(9)—Testimony of defendant in conspiracy prosecution relative to division of profits held admissible, as statement of one performing services in furtherance of conspiracy.**

In prosecution for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.), testimony by defendant, who had pleaded guilty and was called as witness for government relative to division of profits by members of conspiracy, obtained during conversation with bookkeeper, held admissible as statement of one performing services in furtherance of conspiracy and concerning method of operation of defendants.

4. **Witnesses ⚖256—Denying possession to defendants of memoranda used by witnesses to refresh recollection, or separation of portions, held not erroneous, in view of opportunity for inspection (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), denial to defendants of right to possession overnight for inspection of volume containing memoranda of conversations overheard by government witnesses tapping telephone wires, and for separation of portions of book used to refresh recollection of witnesses, held not erroneous, where there was no denial of opportunity to inspect complete volume.

5. **Criminal law ⚖650—Denying application for experimental test of witness' ability to identify voices over telephone held not abuse of discretion (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.), wherein government witness testified to conversations heard on tapping telephone wires, refusal of application for permission to make experimental test of witness' ability to identify voices heard over telephone held not erroneous, as being within discretion of lower court.

6. **Witnesses ⚖326, 330(1)—Refusal, on cross-examination to impeach rebutting testimony, to require witness to write certain words, held proper (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), refusal, on cross-examination to im-

peach rebutting testimony, to require witness to write certain words which he had denied to have written on exhibits shown to him *held* proper, as not proper cross-examination, and as constituting impeachment of impeaching witness.

**7. Witnesses ⟐➡52(7)—Wife of defendant charged with conspiracy to violate prohibition law held competent witness (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

Wife of defendant in prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.) *held* competent to testify as witness in his behalf.

**8. Criminal law ⟐➡1186(4)—Excluding testimony of wife of one defendant charged with conspiracy tending to show alibi, held not to require reversal under evidence (Judicial Code, § 269, as amended by act Feb. 26, 1919 [Comp. St. § 1246]; National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.), exclusion of testimony by wife of one of defendants, tending to establish alibi as to certain defendants, *held* not ground for reversal, under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. § 1246), in view of uncontradicted evidence showing complicity of such defendants in conspiracy charged.

**9. Conspiracy ⟐➡48—Evidence of conspiracy to violate prohibition law held for jury as to one defendant (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

Evidence in prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.) *held*, as pertaining to one defendant, sufficient for jury.

**10. Jury ⟐➡103(6)—Denial of challenge to jurors who had formed opinion held not erroneous, where they stated opinion would be disregarded (Rem. Comp. Stat. Wash. § 331).**

Under Rem. Comp. Stat. Wash. § 331, relative to acceptance of juror who has formed or expressed opinion, denial of challenge to jurors who had formed opinion, but stated that it was not fixed opinion, and could be disregarded, and that they would render verdict according to evidence, *held* not erroneous.

**11. Criminal law ⟐➡1059(3)—Failure to except to court's charge as comment on evidence precludes consideration on appeal.**

Failure of defendants to except to charge of court on ground that it constituted a comment on the evidence precludes consideration thereof on appeal.

Rudkin, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Charles S. Green and others were convicted for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.), and they bring error. Affirmed.

George F. Vanderveer, of Seattle, Wash., for plaintiffs in error.

Thos. P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error here are others of the defendants who were convicted on the trial of the indictment which was under consideration in the case of Olmstead et al. v. United States (No. 5016) 19 F.(2d) 842. They bring the case to this court upon a separate writ of error.

[1] A motion is made to dismiss the writ of error on the ground that the record contains no assignments of error. The writ was allowed and service of citation was had on March 8, 1926. Whether an assignment of errors was filed at the same time does not appear from the record, but the record shows that on May 6, 1926, by stipulation of counsel, an "amended assignment" of errors was filed in the court below. The case was not docketed in this court until November 10, 1926. We are inclined to the view, expressed by Judge Baker in Hultberg v. Anderson (C. C. A.) 203 F. 853, that the requirements of rule 11 that no writ of error shall be allowed unless an assignment of errors has been filed is not jurisdictional, but is only a rule of practice. Such, also, was the view expressed by Judge Denison in Miller v. United States (C. C. A.) 300 F. 529. The motion is denied.

[2] Error is assigned to the admission in evidence of statements which certain defendants not on trial made to government officers while under arrest; said statements having, it is said, no purpose or tendency to promote the objects of the conspiracy, such as the statements of Capt. Jack Rhodes, made at the time of the seizure of the Eva B, as charged in the ninth overt act of count 1. He stated that the Eva B had gone to a point in American waters and there loaded a cargo of liquor, and had then gone to a point in Canadian waters to await an opportunity to bring the liquor into the United States under cover of darkness. Objection was made to the testimony as hearsay. The court, in overruling the objection, instructed the jury that the statement was not to be considered against any of the other defendants under any circumstances, unless it was shown that there was a conspiracy entered into as charged in the indictment, and that, unless it were shown that there was a conspiracy between the defendant Rhodes

and some of the other defendants on trial, or all of them, they could not consider it under any circumstances. It is to be noted, also, that the statements of Rhodes were but corroborative of those of Erickson and Green as to the movements of the Eva B, which statements were received in evidence without objection.

At the close of the trial the defendants moved to withdraw from the consideration of the jury the ninth overt act for want of competent evidence to sustain it. The motion was denied, but the court instructed the jury that statements by any of the defendants, either to officers of the law or others not involved in the conspiracy, not made in furtherance of the conspiracy, were to be considered as evidence only against the parties making the same, and if such parties were not then on trial the jury should disregard the same. If there was error in that instruction, it was error in favor of the defendants, for evidence had been received tending to connect Rhodes with the conspiracy charged, and, such being the case, his acts or declarations were admissible. That he was not on trial with the other defendants was immaterial, Clune v. United States, 159 U. S. 590, 16 S. Ct. 125, 40 L. Ed. 269; Isenhouer v. United States (C. C. A.) 256 F. 842; Reeder v. United States (C. C. A.) 262 F. 36; Sprinkle v. United States (C. C. A.) 141 F. 811; United States v. McKee, 3 Dill. 546, Fed. Cas. No. 15,685. And to render the declarations admissible it was not even necessary that he should have been indicted, United States v. Cole, 5 McLean, 513, Fed. Cas. No. 14,832. The assignments of error directed to evidence of statements made by Curry, Fletcher, Bennett, and Graignic, who also were defendants, but not on trial, come within the principles above announced, and require no further discussion.

[3] We find without merit, also, the assignment as to the testimony of McLean. McLean was a defendant who had pleaded guilty and was called as a witness for the government. He testified, among other things, that he had a conversation with Bennett, the bookkeeper, who was a defendant, but not on trial, concerning the division of the profits, in which Bennett said: "Eleven men put in $1,000 apiece. It was not just a personal conversation. My duties did not call upon me to know anything about that, but it came up one day in my general work." This was objected to on the ground that it was a statement not made in the course of business by any of the defendants on trial. It was a statement, however, of one who was performing services in the furtherance of the conspiracy, and it concerned the method of operation of the defendants.

[4] Error is assigned to what is said to have been the refusal of the trial court to permit full and free opportunity to inspect the volume of memoranda of conversations overheard by witnesses listening in on telephone wires. We search the record in vain for evidence of error under this assignment. The defendants requested an order of the court to turn over to them the book of memoranda containing 700 pages, that they might take it into their possession and inspect it overnight, for purposes of cross-examination on the following day. Again they requested that those portions of the book which had been used to refresh the recollection of the witness Whitney be in some way separated from the remainder of the book and be surrendered to them for inspection. These requests were denied, but there was no denial of opportunity to inspect the volume.

[5] For the purpose of impeaching the witness Corwin, the defendants made application for permission to make an experimental test in open court, or elsewhere, in the presence of court and jury, of Corwin's ability to identify voices heard over the telephone. The denial of the application is assigned as error, but we think it was within the court's discretion. 22 C. J. 756. The request for leave to make the experiment was not an offer to show as a scientific fact the impossibility of recognizing voices in conversations over the telephone, but was a demand that the witness be required to subject himself to a test of his ability to recognize voices, under conditions to be created which, in the very nature of things, could not be identical with conditions under which he had heard the voices to which he testified. Such an experiment would not tend to enlighten a jury, and could only tend to confusion by the creation of collateral issues. It is common knowledge that the recognition of voices heard over telephone wires depends upon many and diverse conditions. In such an experiment as was requested, there could be no certainty of obtaining the conditions under which the witness had listened to conversations, and in any such experiment recognition of the voices would largely depend on the tone force and projective quality of the speaker's voice, the strength of the electric current, and the absence of disturbing sounds. What was said in United States v. Ball, 163 U. S. 662, 673, 16 S. Ct. 1192, 1196 (41 L. Ed. 300), is applicable here: "The granting or refusal of such a request, first made in the midst of the trial, was clearly within the discretion of the court."

[6] It is assigned as error that the court restricted the cross-examination of the witness Fryant, and excluded the defendants' offer to impeach his testimony. Behneman had to some extent been associated with Fryant, a prohibition officer, in listening in on the wires. He subsequently left that service and associated himself with the defense, and he told Olmstead that he had been listening in on his wires, and later he appeared as a witness for the defendants. Fryant had testified as a witness for the prosecution. Behneman's testimony contradicted Fryant's in some particulars. Fryant was called in rebuttal and contradicted several of the items of Behneman's testimony. On his cross-examination, to impeach his rebutting testimony, Fryant was shown three of the defendant's exhibits, and he denied that certain words thereon were written by him. Defendants' counsel then asked him to write those words. This was objected to as not proper cross-examination, and as impeaching an impeaching witness. The same objection was made to the attempted cross-examination of Fryant on Exhibits B–1 to B–27. Those exhibits had not been received in evidence. They had been offered for identification, but excluded by the court as incompetent. We find no error in the rulings. They were clearly sustainable on both grounds of objection.

[7] Under our decision in Rendleman v. United States, 18 F.(2d) 27, the wife of a defendant in the present case was competent to testify as a witness in his behalf. The question arises whether it was reversible error to exclude the testimony of Green's wife, which was offered to show that she, her husband, and the defendant Wm. P. Smith were at Portland, Or., in 1924, from July 7 to September 9, inclusive, or the testimony of Harvey's wife, offered on behalf of the defendants Harvey and Thompson, to show that in 1924, continuously from July 3 to July 10, inclusive, she and her husband were at a place 80 miles distant from Seattle. As it affects the defendant Smith it is very clear that the exclusion of Mrs. Green's testimony is no ground for reversal. The purpose of it was to prove an alibi as against two features of the evidence against Smith:

First, the testimony of Corwin that Smith admitted to him that he was in the wholesale liquor business at 3116 Eastlake avenue until the early part of September, and the testimony of Whitney that Smith admitted to him that he had lived at 3116 Eastlake avenue, Seattle, "from the month of July on," and that Smith admitted the truth of Whitney's statement that he (Whitney) had found on Smith's premises, when raided on November 26, 1924, "a very good history of Smith's liquor transactions." The papers so found were admitted in evidence and they contained entries of liquor transactions, bearing dates of July 7 to July 14, inclusive. Among the papers was the lease of the premises to Smith, which he signed and acknowledged at Seattle on July 14, 1924, as attested by the notary's certificate. These papers show conclusively the untruth of testimony that Smith was in Portland on those dates.

The other evidence against Smith, sought to be disproved by the proposed proof of alibi, was that which related to Smith's arrest in Seattle on September 7, 1924. Jones, a police officer, testified that he had been cautioned to keep his eye on Smith; that he observed suspicious movements by Smith on September 7, 1924, at and near the Georgetown police station in Seattle; that Smith got into his car, the number of which was 130,947, and started away, that the officer followed him until Smith reached a point where there was a Cadillac car in which were 3 men and 18 cases of liquor; that Smith came along with no lights; that about two blocks away he commenced to switch his lights off and on; that the officer answered by a similar switching of his lights; that Smith drove up, and the officer arrested him and the men in the Cadillac; and that Smith said to the officer that it was Olmstead's car and booze and that they were on their way to Portland.

There was contradiction by another witness, who testified that on that morning he heard Smith state to Jones at the Georgetown station that he had come back to get the two Cadillac cars which were being held at the station, which he said belonged to Olmstead. Obviously testimony of Green's wife that Smith was at Portland on September 7 could have no probative value to disprove the well-established fact of his arrest by a public officer in Seattle on that date. Neither that fact, nor the evidence of the circumstances which attended the arrest, has been disputed by any witness, unless it be by the testimony of Green's sister, who, as a witness for the defendants, testified that Green, his wife, and Smith came to Portland on September 7, 1924 —evidence wholly inconsistent with the offered testimony of Green's wife that they went to Portland on July 3 and remained there until September 9.

As to the defendant Green, the only evidence which the proposed alibi would have tended to contradict was the testimony of Cor-

win that he saw Green visit Olmstead's house during the latter part of August and the early part of September, 1924. That was a very unimportant portion of the evidence against Green. There was undisputed testimony that Green was early associated with Olmstead, and that he actively participated in the importation of liquors in furtherance of the conspiracy. He was one of the crew of the Eva B when she was seized on October 5, 1924, while carrying a large cargo of liquors. Whitney testified that, at the time of the raid of the Olympic Repair Shop on September 11, 1924, the defendants Kern and Green said: "We are in the whisky business all right; but we don't like to go to jail, unless you catch some whisky on us. You didn't get us this time; you are too soon."

Whitney testified further than Green stated to him in November, 1924, that he and Kern had been in the whisky business, and had been on the Eva B at the time when she was captured in Canadian waters. There was other testimony of Green's association with the Olmstead group, and of his presence at a meeting of them at Olmstead's house on November 17, 1924. There was undisputed evidence that Green's house had been used as an office for the disposition of liquor, and that telephone calls that came to the house would be relayed either by Green or his wife to Smith or to the defendant Carroll.

The purpose of the testimony so offered as to the defendants Harvey and Thompson must have been to contradict the testimony of government witnesses concerning conversations between the said defendants overheard on the telephone on July 4, 5, and 10, 1924, conversations which indicated participation on the part of both in the work of the conspiracy. But, aside from the testimony as to those conversations, there was abundant and convincing evidence of the complicity of both of said defendants in the conspiracy, evidence which is in no particular contradicted. McLean testified that about May 1, 1924, he was hired by Thompson at a salary of $50 per week to work for Olmstead in taking liquor orders over the telephone, and that Olmstead later raised the weekly pay to $100, that he worked with Thompson taking the morning shift, while he took the afternoon shift.

There was evidence that Harvey was one of the defendants who invested $1,000 in the venture at the beginning, and that it was he who about the middle of July, 1924, told McLean that the wires had been tapped. It was shown, also, that Harvey was one of the defendants present at the garage on Lenora street when it was raided on April 17, 1924, and a truck containing 80 cases of liquor was seized, and that on many occasions he was seen with Olmstead at the Olympic Repair Shop, a place of rendezvous of the defendants. There was the testimony of McPherson, a disinterested witness, as to Harvey's activities at the Mercer Street Garage at a time when a number of the defendants were unloading small square sacks from a truck, and the defendant Nicholles stated that there were 400 cases of whisky there which had come on a truck, and that daily during the months of July and August, for 12 or 14 days, liquor was brought into that garage. Whitney testified to two conversations which he overheard between Thompson and Harvey on July 11, one at 2:56 p. m., and the other at 5:56 p. m., referring to the business of selling and delivering liquor, in which Harvey said, "Well, Dan's stuff is ready;" and Thompson replied, "All right; send it out."

[8] We cannot believe that the exclusion of this offered testimony, testimony which was under the ban of the common law, is ground for reversal of the judgment as to any of the defendants. The evidence of the complicity of Smith, Harvey, and Thompson in the conspiracy is direct, convincing, and wholly uncontradicted. The jury must have decided the issues upon the broad lines of that testimony, and it is not believed that their verdict could have been affected by the evidence offered to show that at certain dates they were not at the places where witnesses for the government said that they were. If any defendant or any witness had denied any of the testimony adduced by the government, so that the jury would have been called upon to weigh conflicting testimony, the proffered evidence of an alibi might have been sufficient to affect the result, and its exclusion would have been error, requiring reversal.

But, while the ruling of the court below may have been technical error, we think it was error which did not affect the substantial rights of any defendant. Under section 269 of the Judicial Code (Comp. St. 1919, § 1246), a conviction is not reversible for errors on the trial where the defendant's guilt is clear. Haywood v. United States (C. C. A.) 268 F. 795; Rich v. United States (C. C. A.) 271 F. 566; Jones v. United States (C. C. A.) 296 F. 632; Fitter v. United States (C. C. A.) 258 F. 567; Raine v. United States (C. C. A.) 299 F. 407; Hobart v. United States (C. C. A.) 299 F. 784; Simmons v. United States (C. C. A.) 300 F. 321; Shuman v. United States (C. C. A.) 16 F.(2d) 457; Horning

v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185.

[9] It is contended that the defendant Wm. P. Smith was merely a customer of the Olmstead gang, and not a partner or agent, and that his "motion for a directed verdict should have been granted." We do not find in the record that such a motion was made or denied, or that a ruling thereon is assigned as error. It would be a sufficient answer to such an assignment, if it had been made, to point to the evidence against Smith which has just been adverted to.

[10] Error is assigned to the denial of the defendants' challenge of certain of the jurors for actual bias. While it was shown that they had heard about the case, and some of them had formed an opinion as to the guilt or innocence of the defendants, all admitted in substance that it was not a fixed opinion, that it could be disregarded, and that they would endeavor to render a verdict according to the evidence, under the instructions of the court. We think there was no error. Section 331, Washington Compiled Statutes (Remington), provides: "Although it should appear that the juror challenged has formed or expressed an opinion upon what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." We are not convinced that there was abuse of discretion in denying the challenge. Spies v. Illinois, 123 U. S. 131, 8 S. Ct. 22, 31 L. Ed. 80.

[11] It is contended that the trial court erred in commenting on the evidence and in attributing to the witness McLean the testimony that $1,000 was subscribed and contributed by each of 11 of the men and $11,000 by Olmstead to promote the enterprise, and it is asserted that McLean did not so testify, but testified merely that he had been so informed by one of the defendants. It is sufficient answer to this contention, which to us seems trivial, to point to the fact that no exception was taken to the charge on the ground now presented. Nor do we find that the court went beyond permissible limits in commenting on the testimony, or that any exception was taken specifically to any expression of the court's discussion of the evidence.

The other points made on behalf of these defendants have been considered in the opinion in the case of Olmstead v. United States (No. 5016) 19 F.(2d) 842, and are not discussed herein.

We find no error. The judgment is affirmed.