## FIRTH STERLING STEEL CO. v. BETHLEHEM STEEL CO.

(District Court, E. D. Pennsylvania. October 8, 1912.)

No. 431.

1. EVIDENCE (§ 154*)—EVIDENCE WRONGFULLY OBTAINED—EFFECT.
   The illegality of the method by which evidence has been obtained does not affect its admissibility.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 443; Dec. Dig. § 154.*]

2. TRIAL (§ 89*)—STRIKING OUT EVIDENCE—PUBLIC POLICY—MILITARY SECRETS.
   Where original drawings of armor-piercing projectiles, made by the Bureau of Ordnance of the Navy Department, were delivered to defendant steel company in conformity with the requirements of a requisition, under a contract prohibiting their disclosure and providing that they should be treated as confidential, copies of such drawings, illegally obtained, when offered in evidence, were privileged, though the witness did not claim the privilege, and the court was properly authorized to sustain a motion to strike them from the record, on the ground of public policy, to prevent the disclosure of military secrets.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 228-234; Dec. Dig. § 89.*]

In Equity. Suit by the Firth Sterling Steel Company against the Bethlehem Steel Company. On motion to expunge certain exhibits from the record. Granted.

Melville W. Church, of Washington, D. C., for complainant.
James A. Watson, of Washington, D. C., for defendant.

THOMPSON, District Judge. It appears from the papers filed in support of the motion that the blueprints known as Complainant's Exhibits Nos. 2 and 3 are copies made by the defendant from original drawings which were made under a contract with the United States of June 22, 1909, for the manufacture and delivery of armor-piercing projectiles for the Bureau of Ordnance of the Navy Department; that the original drawings were made by the defendant, under the terms of its contract, in conformity with the requirements of "requisition" drawing of the Bureau of Ordnance No. 32,362, and that the latter drawing embodied military secrets of such importance to the government that their disclosure was prohibited by the Navy Department. The complainant's patent was granted on January 4, 1910, when requisition drawing No. 32,362 had been in existence for some

---

time. Under the contract the defendant was required to consider all drawings furnished by the bureau as confidential, and for the use of the contractors in the prosecution of the government work only. This requirement had also been contained in the notification to the defendant to submit a bid for the manufacture of the projectiles prior to entering into the contract. It appears that the blueprints made from requisition drawing No. 32,362 embody all of the information contained in that drawing, and considerable additional information relating to projectiles designed by the Bureau of Ordnance of the Navy Department, with the assistance of the ordnance officers of the Bethlehem Steel Company. "Complainant's Exhibit, Drawing Defendant's Shell," was produced from the two blueprint exhibits Nos. 2 and 3, and likewise contains information in relation to requisition drawing No. 32,362.

The blueprints, Exhibits Nos. 2 and 3, are the property of the Bethlehem Steel Company, and were in some manner unlawfully and surreptitiously taken from their plant by some undisclosed person, and delivered to an employé of the complainant, and were offered in evidence in connection with the testimony of one of complainant's witnesses on December 10, 1910. At the time no objection was made to their introduction; but subsequently, on January 10, 1911, defendant's counsel having ascertained the nature of the drawings, gave notice of his intention to make the present motion. About the same time the complainant endeavored by subpœna duces tecum to obtain from the defendant's officers the original drawings, and called as a witness under subpœna the government inspector in charge of the work at the defendant's plant to testify in relation thereto. The witnesses having declined to produce the drawings or to answer, complainant moved to compel them to do so, whereupon Judge Holland held that they were privileged to refuse to answer or to produce the drawings by reason of the military secrets embodied therein.

The Secretary of the Navy has uniformly and consistently declined to permit any information to be given to the complainant in relation to the drawings, and has not permitted copies thereof to be filed in the office of the Secretary of the Interior, where they would be open to public inspection, taking the position throughout that the drawings embodied military secrets. The attitude of the secretary is well defined in the following excerpt from a communication to the complainant's counsel:

"It is believed that the researches and developments made by the Bureau of Ordnance and communicated to the Bethlehem Steel Company, for the purpose of fulfilling its contracts, embody secrets of military value to the government that could not be disclosed without detriment to the public interests. The department must, therefore, in view of the necessity for secrecy as to the operations of the government affecting matters of such vital importance, adhere to its former conclusion in the premises."

[1] At the request of the Navy Department, an Assistant United States Attorney appeared, by direction of the Attorney General, in support of the present motion. At the argument, counsel for the complainant contended that, inasmuch as the witness through whose testimony the exhibits were introduced had not claimed the privilege,

the rule of privilege did not apply, and that the method by which the evidence had been obtained did not affect its admissibility. In the latter contention counsel is undoubtedly correct. As Wigmore says (section 2183):

"The illegality of the act of obtaining the evidence is by no means condoned, but is merely ignored."

[2] I think the method by which the papers were obtained has no bearing upon the question now before the court. The disposition of the present motion is not, however, to be based upon the personal privilege of the witness through whom it is sought to introduce the drawings in evidence, but upon the ground that the topic or subject-matter of the information contained in the drawings is privileged, as constituting secrets of the government in military affairs. Wigmore, §§ 2367, 2375.

Most of the cases in which the rule of public policy forbidding the disclosure of military secrets has been applied have dealt with the right of a witness to refuse to answer, and not with the power of the court to strike out the testimony. In the case of Totten v. United States, 92 U. S. 105, 23 L. Ed. 605, however, it was held that an action could not be maintained against the government, based upon a contract made between the President and the claimant for secret services during the war, upon the ground that:

"The secrecy which such contracts impose precludes any action for their enforcement."

To sustain the complainant's position in this case, the court must hold that, although it may upon grounds of public policy dismiss a suit based upon military secrets, it may not upon those grounds prevent the disclosure of military secrets in a pending suit, except through the privilege of a witness, who may or may not claim the privilege, and that parties are therefore free to effect the disclosure of matters of the utmost importance to the national defense and welfare, if the possession of papers containing such information can be obtained. I have no doubt that in a trial at common law the court might, upon grounds of public policy, strike out evidence of this nature. The case at bar is somewhat analogous to that of Kessler v. Best (C. C.) 121 Fed. 439, where a witness was being examined in the Southern district of New York under section 863, Compiled Statutes, in an action at issue in the United States Circuit Court for the Eastern District of Wisconsin. The witness claimed that certain documents about which he was interrogated were part of the archives of the German consulate, and therefore privileged. Counsel for the German government moved that the witness be excused from answering certain questions with regard to documents belonging to the German consulate, and also that some answers which the witness had already incautiously made, purporting to give the contents of part of such documents, be stricken out. Judge Lacombe in his opinion said:

"The 'privilege' was that of the German government, not of the witness, and inasmuch as the witness attended under the compulsion of the subpœna

issued out of the Circuit Court, Southern District of New York, and answered under constraint of an apprehension of commitment by the same court, should he refuse, it was assumed to be within the power of this court to strike out any part of the testimony which violated the 'privilege' of the German government."

In the case at bar the evidence sought to be introduced, which was excluded by the court's former order, must, in my opinion, independently of the privilege of the witness, or the manner in which the drawings have been secured, be excluded for reasons of public policy which attach to the contents of the papers.

An order will be made expunging the exhibits in question from the record, and directing that they remain in the custody of the clerk pending their further disposition.