### OLMSTEAD et al. v. UNITED STATES.[*]

Circuit Court of Appeals, Ninth Circuit.
May 9, 1927.

No. 5016.

**1. Indictment and information ⬅➡71—Count in prosecution for conspiracy to violate prohibition law held to sufficiently advise defendants of accusation (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

Count of indictment in prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), charging conspiracy to violate the provisions of the act, and setting forth purpose of conspiracy to be unlawfully and willfully to possess intoxicating liquors in violation of act, to sell, barter, and exchange said liquors, to transport and possess same, and knowingly and unlawfully to conduct and maintain common nuisances, by keeping, selling, and bartering such liquor, *held* sufficient, in that it sufficiently advised defendants of nature and cause of accusation.

**2. Conspiracy ⬅➡43(6)—Count for conspiracy need not contain all requisite details of indictment for substantive offense.**

All of details requisite for an indictment for a substantive offense are not necessary in a count for conspiracy.

**3. Indictment and information ⬅➡121(2)—Refusal, in prosecution for conspiracy to violate prohibition law, to require bill of particulars setting up numerous details, held not abuse of discretion (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), denial of demand for bill of particulars showing when and by what act each defendant would be shown to be party to conspiracy, what offense he committed pursuant thereto, what intoxicating liquors he conspired to import, and where it was imported from, and other numerous details, *held* not an abuse of discretion, where court required that bills be fur-

[*]Rehearing denied July 18, 1927.

nished sufficient to inform defendants of nature and cause of accusation.

**4. Criminal law ⬤⟳280(2)—Plea in abatement to indictment, alleging receipt of incompetent evidence by grand jury on information and belief, held properly overruled (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

Plea in abatement to indictment for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), alleging on information and belief that incompetent evidence was received by grand jury, held properly overruled, since, such plea being dilatory, plea must be pleaded with strict exactness, and with certainty, accuracy, and completeness, and must set forth facts and not conclusions of law, nor evidence of facts.

**5. Criminal law ⬤⟳280(1)—Plea in abatement to indictment on information and belief is insufficient.**

A plea in abatement to an indictment on information and belief is insufficient.

**6. Witnesses ⬤⟳253—Prohibition agent held properly permitted to use memoranda copied from originals in testifying to conversations heard by tapping telephone (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

Where prohibition agent, testifying in prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), stated that he had independent recollection of conversations heard by tapping telephone and copied by another, and that he had seen entries written, he was properly permitted, in testifying thereto, to use bound volume of memoranda of such telephone conversations.

**7. Criminal law ⬤⟳386—Testimony of prohibition official as to conversations heard by tapping telephone held not incompetent, because not covering all conversations heard (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

Testimony by prohibition official, in prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), relative to conversations heard by tapping telephone wires, held not incompetent for reason that it did not purport to cover all of conversations heard on wires by witness and other officials.

**8. Criminal law ⬤⟳393(1), 394—Introduction of evidence obtained by tapping telephone wires held not in violation of defendants' constitutional rights (Const. Amends. 4, 5; National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), introduction of evidence obtained by prohibition officials by tapping telephone wires and listening to conversations between defendants held not in violation of defendants' rights under Const. Amends. 4, 5.

**9. Criminal law ⬤⟳984—Sentence on each of counts for conspiracy to import liquor, and to barter, sell, and furnish liquor, held properly imposed.**

Sentence in prosecution for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.) held properly imposed on each of counts charging conspiracy to import liquors and maintain common nuisance, and conspiracy to barter, sell, and furnish liquors.

**10. Criminal law ⬤⟳622(1), 1148—Determining severance in conspiracy cases is discretionary, and not subject to review, except for abuse.**

In conspiracy cases in federal courts, severance is permissible, and courts are vested with judicial discretion to order it, and such exercise of discretion is not subject to review, except for abuse.

**11. Criminal law ⬤⟳622(2)—Denial in conspiracy prosecution of severance to defendant, having represented other defendants as attorney, held not abuse of discretion (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), denial of severance to one of defendants, on ground that he had theretofore represented a number of his codefendants as their attorney, and had received confidential communications in respect to matters involved, and that each of them would be a competent witness therein, held not to constitute abuse of discretion, in absence of affirmative showing that defense was hampered thereby.

**12. Conspiracy ⬤⟳48—Evidence of conspiracy to violate prohibition law held for jury as to one defendant.**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), evidence relative to one defendant held sufficient for jury.

Rudkin, Circuit Judge, dissenting.

In Error to the District Court of the United States, for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Roy Olmstead and others were convicted for conspiracy to violate the National Prohibition Act, and they bring error. Affirmed.

See, also, 5 F.(2d) 712; 7 F.(2d) 756, 760; 19 F.(2d) 850.

J. L. Finch and Paul Carrigan, both of Seattle, Wash., for plaintiff in error Olmstead.

J. L. Finch, of Seattle, Wash., for remaining plaintiffs in error.

Thos. P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. Ninety-one defendants were indicted for conspiracy to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.). Some of them were not apprehended; some were acquitted; others pleaded guilty. Twenty-one were convicted, 9 of whom join in the writ of error. The

conspiracy was charged in two counts: First, a conspiracy to possess, transport, and import intoxicating liquors and to maintain common nuisances; second, a conspiracy to barter, sell, deliver, and furnish intoxicating liquors in violation of the act. There was evidence of the purchase of large quantities of intoxicating liquors in British Columbia, the transportation thereof on the waters of Puget Sound, the landing of the cargoes at various points, the concealment of the same, the employment of a delivery system, in which were engaged scouts, transfer men, office men, salesmen, telephone operators, dispatchers, checkers, and collectors, three bookkeepers, and an attorney. A farm was purchased at which to cache the liquor. A fleet of boats was chartered, and numerous trucks and automobiles were operated. There was evidence of a daily delivery at Seattle of 200 cases of liquor, and of transactions that each month amounted to nearly $200,000.

[1, 2] It is contended that the demurrer to count 1 of the indictment should have been sustained, on the ground that it fails to allege facts sufficient to show the commission of an offense against the United States, in that it does not specify the section of the National Prohibition Act charged to have been violated. The count so demurred to charges conspiracy to violate the provisions of the National Prohibition Act, and sets forth the purpose of the conspirators to be unlawfully and willfully to possess intoxicating liquors in violation of said act, to sell, barter, and exchange said liquors, to transport and possess the same, and knowingly and unlawfully to conduct and maintain common nuisances by keeping, selling, and bartering such intoxicating liquors. The count, we think, was clearly sufficient. With the requisite particularity it sufficiently advised the defendants of the nature and cause of the accusation. Wong Tai v. United States, 47 S. Ct. 300, 71 L. Ed. ——; Miller v. United States (C. C. A.) 300 F. 529; Belvin v. United States (C. C. A.) 12 F.(2d) 548.

If further particularity was desired, the defendants had their remedy by application for bills of particulars, and they subsequently availed themselves of it. The count charges, not that the defendants violated the National Prohibition Act, but that they conspired to violate it. All the details requisite for an indictment for a substantive offense are not necessary in a count for conspiracy. In Williamson v. United States, 207 U. S. 425, 447, 28 S. Ct. 163, 171 (52 L. Ed. 278), the applicable rule is thus stated: "In a charge of conspiracy the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy."

[3] Error is assigned to the court's ruling on the demand of the defendants for bills of particulars. The demands required an answer to numerous interrogatories calling for many items of evidence, in addition to further specifications of the charges. The court ruled that bills be furnished, setting out the provisions of the National Prohibition Act claimed to have been violated and the kind of alcoholic liquors the defendants conspired to import unlawfully, in addition to those mentioned in the indictment under the charge "divers other intoxicating liquors," etc., and that they set forth the place or places from which, and the place or places to which, the conspiracy contemplated the transportation of intoxicating liquors, and the approximate time when each defendant entered in the conspiracy. It is urged that the denial of the demands for other particulars was in abuse of the court's discretion.

We are convinced that there was no abuse of discretion. There was no failure in the bills of particulars as ordered to furnish sufficient information of the nature and cause of the accusation, in order that the accused might prepare for trial and after judgment be able to plead the record in bar of a further prosecution for the same offense. Bartell v. United States, 227 U. S. 427, 431, 33 S. Ct. 383, 57 L. Ed. 583; Wong Tai v. United States, supra. And we find nothing in the record here to indicate that any of the defendants was taken by surprise in the course of the trial, or prejudiced in any way by the refusal of further information. Here the defendants each demanded a bill of particulars, showing when and by what act he would be shown to be a party to the conspiracy, what act he committed pursuant thereto, what intoxicating liquors he conspired to import, where it was imported from, and to what port and when, what intoxicating liquors he conspired to possess unlawfully, where it was possessed, and when, and so on, with numerous details, all of like nature. To have granted such demands for particulars would have been to unduly limit and embarrass the government, and possibly to shut out material evidence. United States v. Gouled (D. C.) 253 F. 239; United States v. Pierce (D. C.) 245 F. 888; Johnson v. United States (C. C. A.) 5 F.(2d) 471.

[4] It is assigned as error that the court below struck out the pleas in abatement. In the pleas it was alleged in substance that three

prohibition officials, together with others acting with them, tapped wires of divers persons in the city of Seattle during a period of several months, and made longhand notes of telephone conversations, which, at the end of each day's work, they passed over to others, to be recorded by dictaphone and subsequently to be typewritten and bound in volumes; that the volumes were brought into the grand jury room by the said prohibition officers, but were not submitted to the grand jury; and that the officers "purported to read passages therefrom" to the grand jury, and explained, interpreted, and expounded the same; that the evidence was irrelevant, incompetent and hearsay; that it was received by the grand jury; and that except and without that testimony no evidence of any character was introduced before the grand jury which proved or tended to prove the defendants guilty of any charge set forth in the indictment.

For a second ground of abatement it was alleged that the indictment was drawn by the district attorney at the instance of Whitney, one of said prohibition officials; that an hour or two before the indictment was returned Whitney called the foreman of the grand jury from the grand jury room and told him that, unless the indictment were returned in the form as presented, he (Whitney) would have a new grand jury called and said foreman would be included in the indictment as implicated in the same offense; that the foreman was thereby coerced to vote for the indictment, and "within an hour or two after said conversation was so held the indictment here was returned into court with the name of said foreman indorsed thereon."

In the plea of the defendant Olmstead it was alleged as a third ground of abatement that some of said prohibition agents had appeared before a United States commissioner and without a showing of probable cause therefor had procured a search warrant to be issued by the commissioner to search said defendant's residence; that the search warrant was illegal, also, in that it directed that search be made for evidence as well as for intoxicating liquor; that said agents and others searched said residence and found no intoxicating liquor, but found and carried away with them by virtue of said warrant a large number of books, papers, and memoranda, which they presented before said grand jury, and thereby greatly influenced the grand jury in returning the indictment; and that, "except for the evidence thus obtained and thus made use of, and the evidence heretofore referred to in the plea in abatement, no evidence of any nature whatever was introduced before said grand jury which proved or tended to prove this defendant guilty of any charge or charges set forth in said indictment."

The court below ruled that objection to the indictment could not be sustained on the ground of the alleged coercion of the foreman by Whitney, there being no allegation that the foreman exerted undue influence, or any influence whatever, upon the jurors, and that as to the other matters alleged in the pleas the court was not required to go behind the return of the indictment, and enter upon an investigation of the relevancy and sufficiency of the testimony to justify the indictment, upon the sole demand of a defendant who, to his plea in abatement, makes affidavit that the facts stated therein are true as he verily believes.

[5] We find no error in the ruling of the trial court. While it is the rule in many jurisdictions that the court will not inquire into the sufficiency of the evidence before the grand jury, the decisions of the Supreme Court and those of most of the inferior federal courts have been to the effect that an indictment cannot be abated, on account of the admission of incompetent or hearsay testimony, unless it affirmatively appear in the plea that no competent evidence of the commission of the offense charged therein was presented to the grand jury, or unless all of the evidence was unlawfully procured in violation of substantial rights of the accused, so as to subject it to exclusion if offered against him. Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Chadwick v. United States (C. C. A.) 141 F. 225; United States v. Standard Oil Co. (D. C.) 154 F. 728; Hillman v. United States (C. C. A.) 192 F. 264; McKinney v. United States (C. C. A.) 199 F. 25; Anderson v. United States (C. C. A.) 273 F. 20; United States v. Morse (D. C.) 292 F. 273; United States v. Silverthorne (D. C.) 265 F. 859. And it is uniformly held that a plea in abatement to an indictment, being a dilatory plea and not favored in law, must be pleaded with strict exactness and with certainty, accuracy, and completeness, and must set forth facts, and not conclusions of law, nor evidence of facts, and that every inference must be against the pleader.

The pleas here fall short of compliance with the rule. The defendants could have had no personal knowledge of the evidence submitted to the grand jury. The verification of each states that the contents of his plea are true "as he verily believes." It has been held —properly, we think—that a plea of abatement to an indictment on information and belief is insufficient, United States v. Bopp (D.

C.) 232 F. 177; United States v. Morse (D. C.) 292 F. 273, 278. A complete answer to Olmstead's contention is that in his plea it is alleged that the prohibition agents submitted to the grand jury books and papers taken from his residence, which contained incriminating matters. It is true the plea alleged that said evidence was obtained upon a search warrant "without a showing of probable cause," and was therefore incompetent. But that allegation presents a question of law, and not of fact, and the trial court, when ruling upon the plea, had before it no evidence whatever to impeach the search warrant.

[6] An assignment of error challenges the testimony adduced by the witness Whitney, in that he was permitted to use a bound volume of memoranda of certain alleged telephone conversations alleged to have been made as follows: That a prohibition agent, sometimes one, sometimes another, listened in to certain alleged conversations over tapped telephone wires, took notes thereof in longhand, and passed on to another the responsibility of listening in while he proceeded to extend his notes; that other agents worked in the same manner, and at the end of the day's work the notes and memoranda were typewritten by Mrs. Whitney; that the agents would meet Mrs. Whitney and compare their former statements with the sheets she had written; that the original memoranda were delivered to Whitney, who lost or destroyed the same; that no attempt was made to show that the volume as bound contained the original lost sheets prepared by Mrs. Whitney; that Whitney and other witnesses were permitted to use the said volume; that the district attorney would ask him, specifying the date and hour, whether he overheard the conversation between any of the defendants, and, if so, to state who was speaking and to give the conversation; that the witness would open the book and read the conversation recorded therein, and then close the book and give his answer.

But the record shows that the witness testified only to conversations which he heard over the wire, and that he used the typewritten book only to refresh his memory. He was asked whether he wrote the entries. He answered that he saw them written, part of them at the time when the conversations were heard, part of them two or three days later; that his wife made all of the entries in the book; that she made stenographic notes of the conversations at the time thereof, and the witness testified that he had an independent recollection of the conversations. The court ruled that he would not be permitted to read from the book.

Said the court: "The court itself has asked the witness whether he had any independent recollection, and he says he has."

In Wigmore (2d Ed.) par. 759, it is said: "Though a witness can testify only as to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and assist his memory by the use of a written instrument, memorandum, or entry in a book, and may be compelled to do so if the writing be presented in court. It does not seem necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided that, after inspecting it, he can speak to the facts from his own recollection." In Goodfriend v. United States, 294 F. 148, this court held it not to be a valid objection to the use of a memorandum by a witness to refresh his memory that it had been copied from another, so long as he could testify from his own recollection.

In Grunberg v. United States (C. C. A.) 145 F. 81, 96, the court cited with approval from Chase's Stephen's Digest of the Law of Evidence the following: "A witness may, while under examination, refresh his memory by referring to any writing made by himself at the time of the transaction concerning which he is questioned, or so soon afterwards that the judge considers it likely that the transaction was at that time fresh in his memory. The witness may also refer to any such writing made by any other person, and read by the witness within the time aforesaid, if when he read it he knew it to be correct." In Pacific Coast S. S. Co. v. Bancroft-Whitney Co. (C. C. A.) 94 F. 180, it was held that a witness may refresh his memory by the use of any written memorandum, although it was not made by himself, if he saw it while the facts therein stated were fresh within his recollection, and he knew that the memorandum, as then made, was correct.

[7] Nor was the testimony incompetent for the reason that it did not purport to cover the whole of the conversations heard on the wires. Schoborg v. United States (C. C. A.) 264 F. 1.

[8] Error is assigned to the ruling on Olmstead's petition to return the property taken on the search warrant from his house and the property taken from the office of his attorney, J. L. Finch, who had possession of certain of Olmstead's papers; also to suppress the evidence obtained by tapping telephone wires leading to the defendant's home and to the office of said attorney. The ruling was that the papers and documents taken from Olmstead's home be suppressed as to him; that the papers belonging to Finch, taken from his safe, be suppressed as to him; but that whether

any of the papers taken from Finch's office might be used against Olmstead must be determined upon the trial. No assignment of error is made as to any such subsequent use of those papers. It was further ruled that the petition to suppress evidence obtained by tapping the telephone wires be denied.

It is contended that by the latter ruling the defendant's rights under the Fourth and Fifth Amendments to the Constitution were violated. The protection of those amendments, however, has never been extended to the exclusion of evidence obtained by listening to the conversation of persons at any place or under any circumstances. The purpose of the amendments is to prevent the invasion of homes and offices and the seizure of incriminating evidence found therein. Whatever may be said of the tapping of telephone wires as an unethical intrusion upon the privacy of persons who are suspected of crime, it is not an act which comes within the letter of the prohibition of constitutional provisions. It is not disputed that evidence obtained by the vision of one who sees through windows or open doors of a dwelling house is admissible. Nor has it been held that evidence obtained by listening at doors or windows is inadmissible. Evidence thus obtained is not believed to be distinguishable from evidence obtained by listening in on telephone wires.

In the principle involved the case here is identical with that of State v. Hester, 137 S. C. 145, 134 S. E. 885, where evidence of conversations overheard by means of a dictaphone was held competent. Said the court: "The fact that the officers in a way, 'entrapped' the defendants, and by artifice enabled themselves to hear their talk, does not make their statements at the time incompetent as testimony." In a case in which possession of papers had been obtained by fraudulent representation that it could be taken by force, if not voluntarily delivered, Judge Hough said: "There is as yet no authoritative decision that obtaining papers or property by fraud or guile is a violation of the Fourth Amendment. Nor, so far as I know, has any court gone quite that far in emasculating the prosecution of offenders." United States v. Maresca (D. C.) 266 F. 713, 718. "The courts do not concern themselves with the method by which a party has secured the evidence which he adduces in support of his contentions." 22 C. J. 192.

In Firth Sterling Steel Co. v. Bethlehem Steel Co. (D. C.) 199 F. 353, the illegality of the method by which evidence was obtained was held not to affect its admissibility; the court quoting from Wigmore (section 2183): "The illegality of the act of obtaining the evi-

dence is by no means condoned, but is merely ignored." In Gindrat v. People, 138 Ill. 103, 27 N. E. 1085, it is said: "Courts, in the administration of the criminal law, are not accustomed to be oversensitive in regard to the sources from which evidence comes, and will avail themselves of all evidence that is competent and pertinent and not subversive of some constitutional or legal right." In Adams v. New York, 192 U. S. 585, 24 S. Ct. 372, 48 L. Ed. 575, it was held that the fact that papers may have been illegally taken from the possession of the party against whom they are offered is not a valid objection to their admissibility; that the court considers the competency of the evidence and not the method by which it was obtained.

[9] The sentence imposed upon the defendant Olmstead included imprisonment for two years on each of the counts of the indictment, the terms to run consecutively. It is contended that the two counts charged in effect but one conspiracy, a conspiracy to violate the National Prohibition Act, for which imprisonment is limited to two years. The contention cannot be sustained. The indictment charges two distinct conspiracies, a conspiracy to import intoxicating liquors and maintain common nuisances in Seattle, and a conspiracy to barter, sell, and furnish intoxicating liquors. For the commission of the acts described in each count as substantive offenses the defendants might have been indicted, convicted, and punished. Ebeling v. Morgan, 237 U. S. 625, 35 S. Ct. 710, 59 L. Ed. 1151; Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153; Massey v. United States (C. C. A.) 281 F. 293; Singer v. United States (C. C. A.) 288 F. 695; Bell v. United States (C. C. A.) 285 F. 145.

[10, 11] The defendant Finch assigns error to the denial of his motion for a separate trial. The ground of his motion was that he had theretofore represented 28 of his codefendants as their attorney in proceedings against them in the same court, and had received from them many confidential communications in relation to matters involved in the present case, and that each of them would be a competent witness for him, and would swear that he was not a member of the conspiracy, and that, if he were tried jointly with them, he would be deprived of his privilege of calling them as witnesses in his behalf. In conspiracy cases, the rule in the federal courts is that severance is permissible, and that the courts are vested with judicial discretion to order it, but that the exercise of that discretion is not subject to review except for abuse. United States v. Ball, 163 U. S. 662, 16 S. Ct. 1192, 41 L. Ed. 400; Heike v. U. S., 227 U. S. 131, 33 S. Ct.

226, 57 L. Ed. 450, Ann. Cas. 1914C, 128; Scheib v. United States (C. C. A.) 14 F.(2d) 75. We are not convinced that there was abuse of discretion in denying the application. It appears that upon the trial the defendant Finch testified in his own behalf, and it does not affirmatively appear that his defense was in any way hampered by his inability to adduce testimony from others.

[12] We cannot sustain the contention that there should have been a directed verdict of acquittal as to the defendant Finch. O'Hara, a former prohibition agent, testified that in February, 1924, Finch admitted to him that he was connected with the "Olmstead gang," and he testified that Finch attempted to bribe him to refrain from interfering with the operations of the gang, which he said was a "tremendous" organization, and that no conception could be had of the size of it, and that he mentioned the names of several members of the gang. No exception was taken to the instruction, in which the court said to the jury, "If you believe O'Hara's testimony, then Finch would be a member of that conspiracy as well;" and the court referred to the fact that Finch was Olmstead's attorney, had appeared as attorney for others of the defendants, had paid premiums on surety bonds for some of them while detained under arrest, and had sought the recovery of some seized automobiles which, according to the testimony of a witness, Finch said belonged to Olmstead. The court, however, submitted to the jury the question whether such legal services were rendered as an attorney in the usual way, or as participation in the plan or scheme charged in the indictment. It was shown, also, that the defendant Finch negotiated the purchase of the ranch which was used as a place of concealment of the stocks of liquor, and that he took the deed thereto with the grantee's name in blank.

We find no error for which the judgment should be reversed. It is accordingly affirmed.

RUDKIN, Circuit Judge (dissenting): The writs of error in this and the following case (19 F.[2d] 850) were sued out in the same case and will be considered together. There is little doubt that at least a considerable number of the plaintiffs in error are guilty of the crimes charged, and whether the indictment should be quashed because there was no competent testimony before the grand jury, or because of unlawful threats made against the foreman of the grand jury by one of the prohibition agents, if such threats are established, are questions of minor importance, in which the general public are little concerned. The same is true in large measure

as to the use made by government witnesses of the compilation of telephone messages under the pretense of refreshing their recollections, although I am clearly of opinion that in this latter respect the rulings of the court below were plainly erroneous.

As stated in the majority opinion, the compilation thus used was prepared in this way: Prohibition agents tapped telephone wires at different places in the city of Seattle, extending over a considerable period of time, and took notes of all conversations passing over the wires in any wise relating to the purchase, sale or transportation of intoxicating liquor. The notes thus taken were turned over to the wife of one of the prohibition agents and typewritten copies were made thereof. The typewritten copies were then compared with the original notes, and the compilation used by the witnesses was prepared from these typewritten copies, with certain alterations and additions not deemed material here. The original notes and the first copies made therefrom were then destroyed. The witnesses who made use of the compilation in testifying had no part in its preparation and had no knowledge whatever as to the truth or accuracy of the matters therein contained, except such recollection as they might have from hearing the original conversations.

The ruling of the court in permitting such use as was made of the compilation, under the circumstances disclosed by the record, was declared erroneous by this court in the recent case of Jewett v. United States, 15 F.(2d) 955. In that case, government witnesses were permitted to refresh their recollections from notes copied from their previous reports, and in condemning the practice Judge Dietrich said:

"Clearly, we think, these rulings were erroneous. It is one thing to awaken a slumbering recollection of an event, but quite another to use a memorandum of a recollection, fresh when it was correctly recorded, but presently beyond the power of the witness so to restore that it will exist apart from the record. In the former case it is quite immaterial by what means the memory is quickened; it may be a song, or a face, or a newspaper item, or a writing of some character. It is sufficient that by some mental operation, however mysterious, the memory is stimulated to recall the event, for when so set in motion it functions quite independently of the actuating cause.

"But that is not the case here presented. The witnesses were unable to testify without having in their hands the copied data to which they could refer for facts which they could not remember; they had no independent recollection thereof. True, they had a general recol-

lection of events to which the data pertained, but they had to resort to those notes for dates and names and persons, and the quantities and kinds of liquor purchased. Under pressure, it is true, and in reply to leading questions, in some instances they answered that they had an independent recollection; but obviously they answered under a measure of misapprehension, for, if they needed to refer to their records only to arouse a present recollection, the reading of the original records and the making of notes therefrom would have fully served the purpose. It would not have been necessary for them to hold in their hands the copied notes and refer to them while they were giving testimony."

In the present case, witness after witness, day after day, testified to names, dates, and events, so numerous and with such unerring accuracy, that it becomes at once apparent that the book, and not the witnesses, was speaking. A better opportunity to color or fabricate testimony could not well be devised by the wit of man. It should be said, perhaps, in deference to the court below, that this case was tried before the decision in the Jewett Case was announced.

But my dissent is based upon much broader grounds. I do not think that testimony thus obtained by federal officers or federal agents is admissible in any event, however the conversations may be proved. Of course, I agree with the majority that courts will not ordinarily inquire into the manner in which a witness gains his information, but there are exceptions to the rule, as well established as the rule itself. For illustration I need only refer to the many decisions of the Supreme Court, of this court, and of the courts of other circuits, excluding evidence obtained by federal officers and federal agents in raiding private dwellings without search warrants, while the like evidence, obtained in the like manner by private individuals and by municipal and state officers, is universally admitted. Whether this distinction is founded in reason is not for me to say. See dissenting opinion in Burdeau v. McDowell, 256 U. S. 465, 476, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159.

Here we are concerned with neither eavesdroppers nor thieves. Nor are we concerned with the acts of private individuals, or the acts of municipal or state officers. We are concerned only with the acts of federal agents, whose powers are limited and controlled by the Constitution of the United States. It is a matter of common knowledge that the protection of the Fourth and Fifth Amendments to the Constitution has been invoked more often and more successfully during the past 10

years then during the entire previous history of the republic. I think it is also matter of common knowledge that there is a growing tendency to encroach upon and ignore constitutional rights. For this there is no excuse. As said by a great constitutional lawyer:

"When the people of this country come to decide upon the acts of their rulers, they will take all these things into consideration. But that presents the political aspect of the case, with which we have nothing to do here. I would only say, in order to prevent misapprehension, that I think it is precisely in a time of war and civil commotion that we should double the guards upon the Constitution. In peaceable and quiet times, our legal rights are in little danger of being overborne; but when the wave of power lashes itself into violence and rage, and goes surging up against the barriers which were made to confine it, then we need the whole strength of an unbroken Constitution to save us from destruction." Ex parte Milligan, 4 Wall. 2, 75 (18 L. Ed. 281).

But, whatever the tendency may be in the direction I have indicated, in other quarters, fortunately the Supreme Court has set its face against it. That court has consistently and persistently declared that the amendments in question must be liberally construed in favor of the citizen and his liberty, and that stealthy encroachments will not be tolerated. Nor are the guaranties contained in these amendments limited · to houses and papers. Their chief aim and purpose was not the protection of property, but the protection of the individual in his liberty and in the privacies of life. Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145.

In discussing the protection that surrounds a letter deposited in the mail, in Ex parte Jackson, 96 U. S. 727, 733 (24 L. Ed. 877), Mr. Justice Field said:

"Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed

against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the Fourth Amendment of the Constitution."

And it is the contents of the letter, not the mere paper, that is thus protected. What is the distinction between a message sent by letter and a message sent by telegraph or by telephone? True, the one is visible, the other invisible; the one is tangible, the other intangible; the one is sealed, and the other unsealed; but these are distinctions without a difference. A person using the telegraph or telephone is not broadcasting to the world. His conversation is sealed from the public as completely as the nature of the instrumentalities employed will permit, and no federal officer or federal agent has a right to take his message from the wires, in order that it may be used against him. Such a situation would be deplorable and intolerable, to say the least. Must the millions of people who use the telephone every day for lawful purposes have their messages interrupted and intercepted in this way? Must their personal, private, and confidential communications to family, friends, and business associates pass through any such scrutiny on the part of agents, in whose selection they have no choice, and for the faithful performance of whose duties they have no security? Agents, whose very names and official stations are in many instances concealed and kept from them. If ills such as these must be borne, our forefathers signally failed in their desire to ordain and establish a government to secure the blessings of liberty to themselves and their posterity.

The judgment should be reversed.