UNITED STATES v. ANTONELLI FIRE-WORKS CO., Inc., et al. (two cases).
Nos. 3423, 3424.

District Court, W. D. New York.
Dec. 22, 1943.

872

George J. Skivington, of Rochester, N. Y., for defendant Antonelli.

Ray F. Fowler, of Rochester, N. Y., for defendants Barbollo and Joseph DeRitis.

Charles P. Maloney, of Rochester, N. Y., for defendant John DeRitis.

William J. Maloney, of Rochester, N. Y., for defendant Antonelli Fireworks Co., Inc.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (R. Norman Kirchgraber, Asst. U. S. Atty., of Buffalo, N. Y., and John M. Kelley, Jr., Sp. Asst. to Atty. Gen., of counsel), for U. S.

BURKE, District Judge.

The defendant Antonelli was arrested at his home at 6:30 o'clock on the morning of June 22, 1943 by agents of the Federal Bureau of Investigation. The arrest was made under authority of a valid warrant of arrest duly issued by a Judge of this Court pursuant to a filed information charging Antonelli and others with willfully making defective hand grenades and incendiary bombs for the United States government and with conspiracy to defraud the government in making defective war materials. Subsequently Antonelli and the others charged with him were indicted for the same offenses charged in the information. The arresting officers in the execution of the warrant searched various rooms of his house without his consent and over his objection and seized books, papers and records either belonging to him personally or legally in his possession, and two unloaded hand grenades. The claim in so many words is that the agents "thoroughly ransacked and searched defendant's house and the various rooms thereof". Antonelli now moves for an order directing the return of the articles seized and for the suppression of the evidence so obtained.

Answering affidavits, among which are affidavits of the United States Attorney and his assistant in charge of the case, do not deny the circumstances of the search and seizure but allege that any papers, documents or property seized by the arresting officers were lawfully seized as an incident to the arrest. They further allege that none of such papers, documents or other property seized at the time of the arrest ever came into the possession of the United States Attorney or his assistants and were never examined by him or his assistants and, moreover, that the United States disclaims any interest in any of such seized papers, documents or other property. There is no claim that Antonelli at the time of his arrest was engaged in the commission of a crime nor that his house was anything more than his ordinary place of abode. Thus the question is clearly presented whether arresting officers in the execution of a valid warrant of arrest may search for and seize evidence to connect a defendant with the crime charged against him.

It is well established that in the case of a legal arrest the person of the accused may be searched to discover and seize the fruits or evidence of crime (Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas.1915C, 1177) and that the place where the arrest is made may be searched to find and seize things connected with the crime. Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543, 39 A. L.R. 790. The right to such search, however, does not include the right to explore the house of an accused for evidence which may incriminate him. United States v. Kirschenblatt, 2 Cir., 16 F.2d 202, 51 A. L.R. 416. The right to search and the validity of the seizure are not dependent on the right to arrest but on the reasonable cause the arresting officer has to believe that articles subject to seizure are con-

cealed at the place of arrest. Carroll v. United States, supra. The fact that the United States Attorney has not examined and disclaims interest in any of the articles seized is eloquent evidence that the articles seized had no connection with the commission of the crimes charged against the defendant. Numerous documents and papers were taken consisting of correspondence between Antonelli Fireworks Co., Inc., and the War Department, Navy Department, Chemical Warfare Service and other United States agencies, a large mass of correspondence and papers belonging to the corporate defendant and relating in the most part to other than governmental business, a check book belonging to the corporate defendant, cancelled checks and bank books belonging to the corporate defendant and to the defendant personally, a number of unpaid checks of an insurance company covering a fire loss payable to the defendant jointly with a governmental agency and two unloaded hand grenades. Not a single item out of the many seized has any connection with the crimes charged against the defendant. There is nothing in the answering affidavits to indicate that the arresting officers had any reason to believe that any articles connected with the offenses charged were concealed in the defendant's house. The conclusion is irresistible that the search was made in the hope of discovering evidence which would connect the defendant with the crimes charged.

■■ The authority to search a defendant's house or even his place of business as an incident to his lawful arrest is no greater than that conveyed by a search warrant. United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775. The seizure would have been invalid even under a search warrant specifically enumerating the articles seized. The government refers in its brief to a case recently decided by a district court in California. United States v. Bell, D.C., 48 F.Supp. 986. Without discussing the case at length it is sufficient to say that the charge in that case was conspiracy to violate the Espionage Act, 50 U.S.C.A. § 31 et seq., and that the Court pointed out in the opinion that the photographs produced in evidence indicated that it would be apparent to any person entering the particular places where searches had been conducted that they were being used not for ordinary residential purposes, but as business places at which dissemination of the books and pamphlets charged in the indictment was being conducted. The lawful possession by Antonelli of documents and property, either his own or the corporation's, was entitled to protection against unreasonable search and seizure. Under the circumstances in the case at bar, the search and seizure were unreasonable and unlawful. The motion for the return of seized articles and the suppression of the evidence so obtained should be granted.

■ The defendant Antonelli Fireworks Co., Inc., moves for an order directing the return of its property illegally seized from the defendant Antonelli at the time of his arrest and for the suppression of the evidence so obtained as against the corporate defendant. Antonelli was an officer of the corporation and as such was legally in possession of the corporate property. Possession by him was the equivalent of possession by the company. The rights of a corporation against illegal search and seizure are entitled to protection as well as the rights of individuals. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426. The evidence consisting of corporate property seized from the defendant Antonelli at the time of his arrest should be suppressed as to the corporate defendant.

■ The government in its brief raises the question as to the jurisdiction of the Court to order the return of the articles seized since they are in the possession of agents of the Federal Bureau of Investigation who are not officers of this Court. In substance this is a proceeding against the United States Attorney and the arresting officers. The United States Attorney and agents of the Federal Bureau of Investigation who have control and custody of the articles seized, are, in respect to the progress of the criminal proceeding against these defendants, subject to the proper exertion of the powers of the Court. Go-Bart Importing Co. v. United States, 282 U.S. 344, 355, 51 S.Ct. 153, 75 L.Ed. 374; Weinberg v. United States, 2 Cir., 126 F. 2d 1004.

■ It appears by the motion papers and opposing affidavits in connection with the motion of Barbollo for an order directing the return of articles seized at the time of his arrest and for the suppression of the evidence so obtained, that the search

of his residence conducted at the time of his arrest was made pursuant to a written waiver signed by Barbollo in the presence of three agents of the Federal Bureau of Investigation wherein he expressly authorized the agents to conduct a complete search of his residence and authorized the agents to take from his residence any letters, papers, materials or other property which they desired. There is nothing to indicate that the waiver was obtained by force or threats. His motion for the return of the articles seized and for the suppression of the evidence so obtained is denied.

■ The corporate defendant moves for an order directing the return of papers, records and other property belonging to it seized in connection with a search conducted at the defendant's plant and for the return of copies or of photographs of corporate records and for the suppression of evidence obtained either directly or indirectly as a result of said search. The following facts are established by the motion papers: Simon was office manager of the defendant corporation until July 15, 1943, and Schelter was assistant office manager until July 15, 1943. Agents of the Federal Bureau of Investigation, on or about June 1, 1943, asked permission of Simon to examine personnel records of the corporate defendant in the custody of Simon at the defendant's plant. These records included applications for employment containing the names and addresses of employees and the places where employees worked in the plant. They also asked for and obtained permission either from Simon or from Schelter to examine production records including the record of production of various departments of the plant and including the so-called press rooms where grenades and bombs were loaded. These records were examined between on or about June 1st and June 22, 1943, the date of Antonelli's arrest. Whatever right the government had to examine the records rested on the permission given either by Simon or Schelter. Prior to giving said permission neither Simon nor Schelter had any express authority to do so from any officer of the defendant corporation. Subsequent to the examination of the books and records above referred to Simon told Antonelli that he had given such permission and that agents of the Federal Bureau of Investigation had made an examination pursuant to the permission. Antonelli made no objection thereto. That was the status of the matter on the day of Antonelli's arrest. Subsequent to the time of Antonelli's arrest and while he was in jail agents of the Federal Bureau of Investigation went to the defendant's plant and with Simon's permission, given without the knowledge of Antonelli or of any officer of the defendant corporation, set up a camera or a photostat machine within the plant and took numerous photostats of individual earning records of employees. None were taken without the permission of Simon as office manager. No books, records or other papers were removed from the plant.

The protection afforded by the Fourth Amendment of the Constitution is against unreasonable searches. Simon, as office manager, and Schelter, as assistant office manager, had control and custody of the company records. The Special Agents who examined and photographed the records had a right to assume that Simon and Schelter, by reason of the nature of their employment, had authority to consent on behalf of the corporation to an orderly examination of company records. No general search was made. It was but a restricted examination limited to those records covered by the consent given by responsible employees. No element of coercion was involved. No rights of the corporation were infringed. Raine v. United States, 9 Cir., 299 F. 407, 411, certiorari denied 266 U.S. 611, 45 S.Ct. 94, 69 L.Ed. 467.

■ The defendant Antonelli moves for the suppression of evidence so obtained as against him individually. It does not appear that any individual right of Antonelli was invaded. Only corporate records were examined and photographed. Even if the examination were unlawful the right to object to it and the right to the suppression of evidence obtained as a result of it would be available only to the corporation. United States v. Goldstein, 2 Cir., 120 F.2d 485, 489.

■ The corporate defendant further moves for the return of corporate records and documents produced before the grand jury pursuant to a subpoena duces tecum directed to Simon and for the suppression of the evidence so procured, on the ground that Simon had no authority to produce corporate records. When the subpoena duces tecum was issued (July 7, 1943) Antonelli, the president of the com-

pany, was in jail. The records and books were in the custody of Simon as office manager. As far as the motion papers show, he and possibly Schelter were the only persons available who had sufficient familiarity with the books and records to collect and assemble the various items from the books and records enumerated in the subpoena. There is nothing in the motion papers to indicate that either Anna Barbollo, who was secretary of the corporation, or Anthony DeRitis, who was vice-president, had any intimate knowledge of the company records. Clearly officers of the company could not withhold the required records on the ground that they might incriminate the corporation or its officers. Wilson v. United States, 221 U.S. 361, 382, 31 S.Ct. 538, 55 L.Ed. 771, Ann. Cas.1912D, 558. The government had the choice of procuring the issuance of a subpoena duces tecum directed either to officers of the company who (as far as the motion papers show) could not comply with its requirements because of their unfamiliarity with the records or to Simon, the office manager, who was familiar with the records and in whose custody they were by authority of the company. Furthermore the company, through knowledge of its officers, knew that Simon had been served with a subpoena duces tecum requiring him to produce the records. The company did not question the validity of the subpoena by any legal proceeding as it could have done. Instead, on July 21, 1943, and before the subpoena was returnable, officers of the company instructed Simon that he had no right to produce the records and should not produce them. The government had the power to require the production of the company records by a subpoena duces tecum directed to Simon because he was the person who had possession of the records and because the records were material to the inquiry and could not lawfully be withheld by the company. Wilson v. United States, supra. Likewise the government had the right to procure by a subpoena duces tecum production before the grand jury of company records in the possession of Maloney, an attorney for the company.

 Antonelli, Barbollo, John DeRitis, Joseph DeRitis and the corporation have filed pleas in abatement by which they seek to test the validity of the indictments. The government moves to strike from the record all of the pleas assigning various reasons for their invalidity. As one of the grounds for the pleas it is alleged by all of the defendants that there was present in the grand jury room during the examination of witnesses persons other than those lawfully entitled to be present. The defendants admit that they cannot give the names of such persons, nor the exact time when they were present but they allege that on the day when one Anne Vacarelli was examined before the grand jury there were upwards of fifty persons present and on another occasion when one Agnes Broughton was examined there were upwards of thirty persons present and that a large number of the persons present on those occasions were not lawfully entitled to be present. None of the defendants appeared before the grand jury. The pleas are unsupported by the affidavit of any person who was present. A plea in abatement is a dilatory plea. It seeks to avoid a trial on the merits and is not favored in law. Facts on which it is based must be set forth with strict exactness, certainty and completeness. Conclusions of law will not suffice. Every inference must be against the pleader. Olmstead v. United States, 19 F.2d 842, 53 A.L.R. 1472. On the argument it was pointed out by the Court that the pleas were unsupported by the affidavit of any person present before the grand jury who could have knowledge of the facts. The lack of supporting affidavits gives rise to the inference that evidence to support the assertion is not available. The verification of the pleas by the defendants who could have no knowledge of the facts is entitled to no more weight than a plea on information and belief.

 Pleas in abatement on behalf of Antonelli, Barbollo and the corporate defendant allege facts which tend to show that evidence secured by government agents in violation of defendants' constitutional rights was introduced before the grand jury. The defendants moreover allege that there was no legal evidence before the grand jury to support the indictments and that upon information and belief the only evidence before the grand jury was evidence illegally procured and other evidence which was procured as a result of such evidence illegally obtained. For the purposes of this motion it may be conceded that there was presented to the grand jury evidence which had been obtained directly or indirectly in violation of defendants' constitutional rights. That however does not vitiate the indictments

876

if they are supported by any legal evidence. The defendants could not know what evidence was presented. Their assertion that there was no legal evidence before the grand jury is to be viewed as a mere legal conclusion and will not support a plea in abatement on this ground. United States v. McGuire, 2 Cir., 64 F.2d 485; Cox v. Vaught, 10 Cir., 52 F.2d 562; Kastel v. United States, 2 Cir., 23 F.2d 156. All of the pleas in abatement may be stricken from the record as invalid.

■ The bare allegation that there was no legal evidence to support the indictments is insufficient to warrant the Court in aiding the defendants in exploring the government's case before trial. On this showing the defendants are not entitled to an examination of the grand jury minutes. Kastel v. United States, supra; United States v. Garsson, D.C., 291 F. 646.

The question as to the exclusion on the trial of evidence obtained as a result of evidence illegally seized and herewith suppressed may be dealt with at the trial.

Settle order on notice.