UNITED STATES v. NATIONAL WHOLE-SALE DRUGGISTS' ASS'N et al.

No. 618–C.

District Court, D. New Jersey.

July 19, 1945.

Wendell Berge, Asst. Atty. Gen., Thorn Lord, U. S. Atty., of Newark, N. J., Daniel B. Britt and William Schwartz, Sp. Assts. to Atty. Gen., for the Government.

Lindabury, Depue & Faulks and Stryker, Tams & Horner, all of Newark, N. J. (Hodges, Reavis, Pantaleoni & Downey, of New York City, of counsel), for defendant McKesson & Robbins, Inc.

MEANEY, District Judge.

The indictment charges the National Wholesale Druggists' Association, 23 wholesale drug corporations alleged to be members of the National Wholesale Druggists' Association, and 29 individuals, with conspiracy in restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1.

The charges as set forth in the indictment are that these defendants have been engaged from in or about 1932 to the date of its return, February 6, 1942, in a continuing conspiracy "to raise, fix and maintain the wholesaler's margin of profit on drug products by (a) raising, fixing, stabilizing, and maintaining the wholesale selling prices of said drug products and by (b) fixing and maintaining the wholesale purchasing prices of said drug products at levels demanded by the said defendants and other members" of the association. The theory of the indictment is of a continuing conspiracy, charging the defendants with having "regularly and continuously entered into those agreements and done those things which they conspired to do."

McKesson & Robbins, Incorporated, one of the 23 wholesalers named as defendants, has filed a plea in abatement, the legal sufficiency of which the government attacks by demurrer. The defendant has joined with its plea, a motion to quash and for leave to inspect the grand jury minutes. To these pleadings the government has filed its motion to strike.

The motion to quash and the plea in abatement, as to defendant McKesson & Robbins, and for an inspection of the minutes of the Grand Jury which returned said indictment, are based upon the following allegations:

(1) From December 8, 1938 to July 1, 1941 the business, assets and property of the company were in custodia legis. The company filed a voluntary petition in the United States District Court for reorganization, which petition was duly approved on December 8, 1938 and that as a result thereof the company became powerless and without capacity to operate as a corporation except under the control of said Court. During the period, December 8, 1938 to July 1, 1941, a trustee duly appointed by the Court had title to the assets, property and franchises of the company and operated its business to the exclusion of the company and its officers, directors, employees and agents and that the company did not, nor did its directors, officers, employees or agents in its behalf, in fact, perform or purport to perform any act with respect to the operation of its business or the management or control of said property. On July 1, 1941, pursuant to Court order, the said trustee transferred title to the company of all its assets, properties and franchises, and relinquished to the company the operation and management thereof.

(2) On information and belief, no evidence whatever was submitted to the Grand Jury which returned the indictment, that during the period from December 8, 1938 to July 1, 1941, the business, assets and property of the company were in custodia legis and the company had, during said period, no capacity or power to engage in, and did not engage or purport to engage in the combination or conspiracy alleged in the indictment.

(3) On information and belief, there was no evidence whatever before the Grand Jury which tended to prove or proved that after July 1, 1941 the company engaged in the combination or conspiracy as alleged in the indictment.

The motion to quash and the plea in abatement challenge the indictment upon the ground that no evidence to support it was given before the Grand Jury and, primarily, that there was no evidence to show a re-entry or rejoinder in the alleged conspiracy after July 1, 1941 when the con-

trol of defendant, McKesson & Robbins, Inc., by the trustee was terminated.

There is no dispute between the parties that for the period from December 8, 1938 to July 1, 1941, defendant was in the custody and control of the District Court for Southern New York whose trustee was in exclusive possession and management. During such period there was no legal capacity in the defendant to engage in the conspiracy. The position taken by the defendant is that the filing of the petition constituted an effective withdrawal from the conspiracy and that the government has failed to produce any evidence to show an effective re-entry or rejoinder in such conspiracy subsequent to July 1, 1941.

The undisputed facts show that commencing on July 1, 1941 McKesson & Robbins was again in full possession and control of its assets and business. It appears further, without dispute, that six of the individual defendants named in the indictment were officers and agents of the corporation from 1932 to December 8, 1938 at which time they became agents of the trustee and acted as such until the trusteeship terminated on July 1, 1941. On the latter date, when the defendant corporation resumed its business, these same individuals were reinstated in their former positions.

It also appears that the purchase and sale of drug products at prices in accord with the schedules established under the conspiracy were continued throughout the entire period during which the trustee was in control as well as during the period following the termination thereof. Throughout the entire period the officers and agents remained the same; albeit under the control of the court for the duration of the trusteeship. These were the identical persons who had been officers of the defendant corporation prior to December 8, 1938 and who were re-instated on July 1, 1941.

For the purposes of this motion it must be conceded that the conspiracy and the purchases and sales pursuant thereto, prior to the appointment of the trustee, were illegal. The matter is then resolved down to the question of whether, upon the resumption of legal control of the business and assets of the defendant corporation by the same officers and agents who had previously participated in and had been members of the conspiracy and having full knowledge thereof, the continued practice by such officers and agents of strict compliance with the prices established and maintained under the conspiracy constituted a re-entry into the conspiracy by the defendant corporation.

It is the conclusion of the Court that upon the facts, this question must be answered in the affirmative.

The contention of the defendant is that the acts of McKesson & Robbins in buying and selling drugs under the terms and at the prices fixed and maintained under and pursuant to the stabilization plans theretofore adopted, without more, fall short of establishing an effective re-entry or re-joining in the conspiracy, since it is alleged the plans in themselves are not illegal.

Whether the position taken by the defendant would be sound if the facts disclosed no identity of control, need not now be determined. The mere purchase and sale at prices established by an alleged conspiracy without knowledge or agreement would not necessarily affect a joinder in a conspiracy.

In the present case, such action as may have been taken by the trustee in adhering to the price schedule established before his appointment, was of course not a continuance of participation in any conspiracy which may have theretofore existed. But when the same officers and agents who were in control of the company before the trusteeship resumed full management of the company after expiration of trusteeship, they were in a different position from that of the trustee. During the incumbency of the trustee, they had been in charge of the operations of the company. When they resumed nominal as well as actual control, their acts were in no wise to be considered merely as continuation of the practices established by the trustee. These acts were rather the result of deliberate choice, and constituted adherence to the price schedules as established by McKesson & Robbins in conjunction with their alleged co-operators and are to be deemed, in the absence of any declaration or indication to the contrary, to be a resumption of the attitude originally adopted by them. Substantial conformity with the results of the original price agreements and controls, with practically no variation therefrom, is gravely indicative of an intent on the part of the refurbished company to resume participation actually in the alleged conspiracy, with consequent enjoyment of the fruits thereof.

Any other interpretation of the acts of the agents and officers of the McKesson & Robbins Company would make the fortuitous intervention of the trusteeship a shield behind which they could find cover for dire machinations and reprehensible skullduggery.

In the case of Eugene Dietzgen Co. v. Federal Trade Commission, 7 Cir., 142 F. 2d 321, at page 331, the Court found a joinder in a conspiracy where the defendant, although not a party to the initial conspiracy, subsequently adopted the schedule and made his prices agree. In that case the Court stated:

"Where numerous competitors .fixed the prices which they agree to maintain, and another competitor, not a party to the agreement originally, adopts the schedule and makes his prices agree, to the last penny, as the petitioners did, with the prices which the competitors fixed and charged, he cannot avoid responsibility for his action even though he be less active in' the first instance, or because his subsequent action was without affirmative, express agreement on his part to maintain the prices fixed by the others.

"We must look to the substance and not to the form of the conspirators' conduct."

To the same effect is the holding in United States v. Masonite Corp., 316 U.S. 265, 266, 62 S.Ct. 1070, 86 L.Ed. 1461.

■ It follows that where a party to the original express agreements, after having withdrawn from the scheme, resumes buying and selling under the schedules initially agreed upon, with full knowledge of such agreements and of the methods by which the schedules thereby established are to be maintained, they cannot seek to avoid liability by alleging that they did not expressly agree anew to participate.

■ The defendant has argued that it was compelled to purchase and sell at the prices fixed under the initial agreements in order to avoid economic and financial ruin, and that therefore the fact that it did purchase under the schedule established is not indicative of any participation, re-entry or continuation therein. The Supreme Court in United States v. Socony-Vacuum Oil Co., Inc., et al., 310 U.S. 150, at pages 220, 221, 60 S.Ct. 811, 843, 84 L. Ed. 1129, has effectively disposed of such an attempted justification of similar practices. In the cited case that court stated: "But such defense is typical of the protestations usually made in price-fixing cases. Ruinous competition, financial disaster, evils of price cutting and the like appear throughout our history as ostensible justifications for price-fixing."

And further: "Congress * * * has not permitted the age-old cry of ruinous competition and competitive evils to be a defense to price-fixing conspiracies."

Pleas in abatement, being dilatory pleas and not favored in law, must be pleaded with strict exactness, certainty and completeness and must set forth facts, and not conclusions of law, nor evidence of facts and every inference must be against the pleader. A plea on information and belief is insufficient. Olmstead v. United States, 9 Cir., 19 F.2d 842, at page 845, 53 A.L.R. 1472; United States v. Lehigh Valley Railroad Company, D.C., 43 F.2d 135.

■ Where it appears that sufficient evidence was before the jury from which an inference of guilt may be drawn, it is not within the province of this court to inquire further.

This rule was clearly laid down in the Olmstead case, supra [19 F.2d 845], where the Court stated: "* * * the decisions of the Supreme Court and those of most of the inferior federal courts have been to the effect that an indictment cannot be abated, * * * unless it affirmatively appear in the plea that no competent evidence of the commission of the offense charged therein was presented to the grand jury, or unless all of the evidence was unlawfully procured in violation of substantial rights of the accused, so as to subject it to exclusion if offered against him."

The pleas here fall short of establishing the requisite lack of evidence of facts from which the Grand Jury could properly have returned the indictment.

For the same reasons the motion to quash must fail.

The defendant has joined with its plea and motion to quash the additional motion for an inspection of the Grand Jury minutes. The language in support of this motion is identical with that of the prior motion and plea.

■ While it is apparent that the Court has the power to grant a motion for inspection of the Grand Jury minutes, that power will be exercised only in cases of extreme compulsion. Where there is no allegation of an improperly constituted body, nor of fraud, misconduct or corruption and

no positive allegation that there was no evidence of any sort before the Grand Jury, such power will not be exercised. Compare United States v. Gouled, D.C., 253 F. 242; United States v. Oley, D.C., 21 F.Supp. 281; and United States v. Morse, D.C., 292 F. 273.

For the reasons above set forth and after a careful examination of the briefs presented, it is my conclusion that the demurrer to the plea in abatement should be sustained. The motions to quash and for an inspection of the Grand Jury minutes are denied and the Government's motions to strike are granted.

Orders may be entered accordingly.